836 F.2d 126
 9 Employee Benefits Ca 1268
 Joseph W. ACCARDI, Theresa Apice, George L. Barnwell, Herby
L. Bryant, Carmine A. Cippriano, Alfred A. De Leo, Ronald De
Meo, Joseph Duggan, Evelyn F. Ernst, Roy L. Garland, Anthony
V. Palmisano, John J. Sheridan, Ralph E. Visconti, Eduardo
F. Gutierrez, Joseph S. Tralongo, Ann C. Venturino,
Plaintiffs-Appellees,
v.
CONTROL DATA CORPORATION and International Business Machines
Corp., Defendants,
Control Data Corporation, Defendant-Appellant.
 No. 345, Docket 87-7561.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 26, 1987.
Decided Dec. 31, 1987.
 
 Stephen A. Agus, New York City (Albert A. Hatem, Purrington, McConnell & Agus, New York City), for plaintiffs-appellees.
 Barbara A. Leininger, New York City (W. Hubert Plummer, Oppenheimer Wolff & Donnelly, New York City), for defendant-appellant.
 Before FEINBERG, Chief Judge, NEWMAN and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Control Data Corporation ("CDC") appeals from Judge Knapp's grant of summary judgment for plaintiffs in this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Secs. 1001-1461 (1982), 658 F.Supp. 881. He held that CDC acted arbitrarily and capriciously in refusing to pay severance benefits to the plaintiffs upon the sale of their division to another corporation that continued their employment. Because CDC's decision as plan administrator to deny severance benefits was reasonable, we reverse. However, we remand so the district court can address the issue of whether plaintiffs may be entitled to a continuation of benefits under an agreement between their prior employer and CDC.
 
 BACKGROUND
 
 2
 As part of the settlement of a private antitrust action, the International Business Machines Corporation ("IBM") sold a wholly owned subsidiary, the Service Bureau Corporation ("SBC"), to CDC on January 12, 1973. The Purchase Agreement between IBM and CDC included a Benefits Agreement guaranteeing that the 1,700 SBC employees would continue to receive from CDC the same pension, retirement, profit sharing plans, group life plans, severance and vacation benefits that they had previously enjoyed as IBM employees. The rights and obligations of IBM, SBC and CDC under the Benefits Agreement were to bind their "respective successors by merger, consolidation or by way of acquisition of all or substantially all the assets of [SBC]." Severance benefits were incorporated into the Benefits Agreement through the attachment of a section from IBM's Managers' Manual describing IBM's separation policies. IBM and CDC also entered into a "Depository Agreement," under which IBM paid $26 million into an account to fund some of the guaranteed benefits. No severance benefits were paid by IBM to the SBC employees who thereafter were employed by CDC.
 
 
 3
 Shortly thereafter, CDC decided to liquidate SBC and to integrate the latter's assets and business into CDC. As a result, the sixteen former SBC employees who are the plaintiffs here were transferred to CDC's Brokerage Transaction Services Division ("BTSI"). So far as the record discloses, severance benefits were neither requested nor paid when CDC formally became their employer.
 
 
 4
 On June 30, 1985, CDC sold its BTSI division to Automatic Data Processing, Inc. ("ADP"). Under the terms of the sale, ADP was to continue to employ the BTSI employees in the same capacities and at their previous salaries. ADP also agreed to credit BTSI employees for all years of service at both IBM and CDC for purposes of participating in ADP's benefit programs and welfare plans, including severance pay. ADP's benefit programs are not, however, identical to those guaranteed under the Benefits Agreement between IBM and CDC.
 
 
 5
 On July 2, 1985, the plaintiffs were informed that ADP was their new employer. None refused employment. All, however, made a written request to CDC for severance pay. After stating that the IBM policies applicable to SBC employees do not address separation resulting from the sale of a division, CDC concluded that severance benefits were not appropriate where continuity of employment was provided. Accordingly, CDC denied the request.
 
 
 6
 Plaintiffs thereafter filed the instant action, alleging violations of ERISA. The complaint sought severance benefits or, in the alternative, continued overall coverage under the Benefits Agreement. The plaintiffs agreed to abandon their claim for continued overall benefits if they were to succeed on their severance pay claim. The district court thereafter entered summary judgment in favor of the plaintiffs on the ground that CDC's denial of severance benefits was arbitrary and capricious.
 
 DISCUSSION
 
 7
 The parties agree that the severance policy at issue is an "employee welfare benefit plan" under ERISA, 29 U.S.C. Sec. 1002(1) 1982), see Gilbert v. Burlington Indus., 765 F.2d 320, 324-26 (2d Cir.1985), aff'd mem., --- U.S. ----, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986), and that CDC, as plan administrator, was a fiduciary to the plan. 29 U.S.C. Sec. 1002(14), (16). ERISA provides that a "fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... in accordance with the documents and instruments governing the plan...." 29 U.S.C. Sec. 1104(a)(1) (1982). The parties also agree that the standard of review of a plan administrator's decision to grant or deny benefits under the plan is whether the decision was arbitrary and capricious. Schwartz v. Newsweek, Inc., 827 F.2d 879, 881 (2d Cir.1987).
 
 
 8
 We believe that the denial of severance pay under the present circumstances was neither arbitrary nor capricious. The IBM separation policy described in the Managers' Manual does not address the issue of severance benefits in the context of a sale of a division. The Manual describes three types of separation other than death or retirement: "Voluntary Resignation," "Mutual Agreement Resignation," and "Dismissal." "Voluntary Resignation" occurs "[w]hen an employee resigns completely of his own accord." "Mutual Agreement Resignation" occurs "[w]hen the company and the employee agree that the separation is in the best interest of both.... Such separations usually result when ... the employee failed to meet IBM standards of performance in his job after he has received good training, proper management assistance and an opportunity to apply himself." "Dismissal" occurs when the employee refuses "Mutual Agreement Resignation" or when "an employee's activity is not in the interest of the company's relations with customers, employees, the general public or others," typically when an employee violates company rules or engages in misconduct. None of these categories of separation includes the sale of a division where the acquiring entity hires the division's employees.
 
 
 9
 Under the IBM separation policy, moreover, the payment of severance benefits was discretionary and available only in the case of mutually agreed resignation or dismissal for substandard performance. The Managers' Manual also indicates that partial repayment of severance benefits may be required when an employee is rehired by IBM after a brief period of time. These features of the separation policy plausibly led CDC to conclude that severance pay was intended by IBM as a discretionary unemployment benefit and was thus not available when an operating division is sold and no break in employment occurs. The fact that other interpretations may also be plausible does not render the plan administrator's interpretation arbitrary or capricious. Schwartz, 827 F.2d at 882.
 
 
 10
 Moreover, in the single instance of a sale of an IBM division in the record, namely the sale of SBC to CDC in the instant case, IBM did not pay severance benefits, without protest by any SBC employee so far as we can tell. Neither party has attributed significance to SBC's formal status as a separate corporation, and there is nothing in the record that indicates any expectation or understanding that SBC's employees were entitled to severance benefits when it was liquidated and they were employed directly by CDC. The following of the precedents at hand by a plan administrator is hardly an unreasonable interpretation of the governing plan or a denial to employees of reasonably held expectations. Id. at 883 n. 3.
 
 
 11
 Finally, our conclusion is reinforced by the substantial number of decisions in which plan administrators' refusals to award severance pay upon the sale of a division have been upheld. See, e.g., Schwartz v. Newsweek, Inc., 827 F.2d 879 (2d Cir.1987); Pabst Brewing Co. v. Anger, 784 F.2d 338 (8th Cir.1986), aff'g, 610 F.Supp. 214 (D.Minn.1985); Holland v. Burlington Indus., 772 F.2d 1140 (4th Cir.1985), aff'd mem., --- U.S. ----, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986); Jung v. FMC Corp., 755 F.2d 708 (9th Cir.1985); Sly v. P.R. Mallory & Co., 712 F.2d 1209 (7th Cir.1983); DeAngelis v. Warner Lambert Co., 641 F.Supp. 467 (S.D.N.Y.1986); Ausloos v. Chromalloy Amer. Corp., 626 F.Supp. 324 (E.D.Wisc.1986).
 
 
 12
 Our conclusion that CDC may deny severance pay does not, however, end this case. The complaint sought in the alternative the continuation of overall benefits (including future severance benefits) as guaranteed by the Benefits Agreement. Plaintiffs agreed to drop this claim if the district court upheld their demand for severance pay. Our disposition of the severance claim thus appears to revive the claim for continuation of the overall benefits provided by the Benefits Agreement. Accordingly, while expressing no view whatsoever as to the outcome, we remand to the district court so that it may consider the question of the plaintiffs' entitlements under the Benefits Agreement.
 
 
 13
 Reversed and remanded.