Joseph W. **ACCARDI**, Theresa Apice, George L. Barnwell, Herby L. Bryant, Carmine A. Cipriano, Alfred A. De Leo, Ronald De Meo, Joseph Duggan, Evelyn F. Ernst, Roy L. Garland, Anthony V. Palmisano, John J. Sheridan, Ralph E. Visconti, Eduardo F. Gutierrez, Joseph S. Tralongo, Ann C. Venturino, Plaintiffs,

v.

**CONTROL DATA CORPORATION and International Business Machines Corp., Defendants.**

No. 85 Civ. 9554 (WK).

United States District Court, S.D. New York.

July 8, 1988.

Stephen A. Agus, Purrington, McConnell & Agus, New York City, for plaintiffs.

W. Hubert Plummer, Oppenheimer Wolff & Donnelly, New York City, for defendants.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

This ERISA action is before us on remand from the Second Circuit to consider plaintiffs' second cause of action, wherein plaintiffs assert that defendant Control Data Corporation ("CDC") is obligated to continue providing benefits to plaintiffs after the division in which they worked ("BTSI") was sold to another company. Defendant moves for summary judgment pursuant to Fed.R.Civ.P. 56.[1] For reasons which follow, the motion is granted.

## FACTS

The relevant background is contained in the Court of Appeals' opinion reported at 836 F.2d 126 (2d Cir.1987), and in our previous opinion, reported at 658 F.Supp. 881 (S.D.N.Y.1987). We here recite only those additional facts necessary to understand the question presented on this motion.

After the division in which plaintiffs worked was sold to Automatic Data Processing ("ADP"), CDC received a request for continued benefits from several of the plaintiffs. The request was denied based on the following three provisions of the Benefits Agreement:

A. "Eligible Employees" means all persons who, on the date of the execution hereof, are regular employees of SBC covered under the IBM Employee Benefit Plans ... and who thereafter remain regular employees of SBC but, for purposes hereof, treating employment subsequent to the date hereof by CDC or by any other employer which is an Other Subsidiary of CDC as though it were employment by SBC (Benefits Agreement at Section 1).

B. "Other Subsidiary of CDC" means each corporation owned in whole or in part by CDC the employees of which, at the time, are eligible to participate in the CDC Retirement Plan (Benefits Agreement at Section 1).

C. The rights and obligations hereunder of IBM, SBC and CDC shall pass to their respective successors by merger, consolidation or by way of acquisition of all or substantially all the

1. Control Data Corporation is the only defendant remaining in the case, the other defendant having been dismissed in 1986.

assets of the party in question (Benefits Agreement at Section 9).

In reviewing plaintiffs' requests, CDC determined that plaintiffs were no longer "Eligible Employees" under the Benefits Agreement because they were no longer employed by SBC or CDC, nor was ADP an "Other Subsidiary" of CDC. Furthermore, since the *de minimis* SBC assets included in the BTSI acquisition [2] could by no means be deemed substantially all the assets of CDC or SBC, defendant concluded that it had no obligation to guarantee continued benefits under Section 9 of the Benefits Agreement. (Aff. of Ruth A. Rich ¶ 10–12).

Plaintiffs take the position that the Benefits Agreement must be read in conjunction with the other documents effectuating IBM's sale of SBC, including the Depositary Agreement whereby IBM created a $26 million fund out of which benefits for former SBC employees would be paid. In particular, plaintiffs rely upon language contained in section 7(a) of the Depositary Agreement, which states that the provisions of such agreement "are intended for the benefit of Eligible Employees" and "are irrevocable" and "may not ... be changed without the consent of such beneficiaries."

## DISCUSSION

■ The parties agree that the standard of review of a Plan Administrator's decision to grant or deny benefits under an ERISA plan is whether the decision was arbitrary and capricious. *Accardi v. Control Data Corp.* (2d Cir.1987) 836 F.2d 126, 128. Since CDC's denial of continued benefits was consistent with the provisions of the Benefits Agreement, we conclude that the decision was not arbitrary or capricious.[3]

Under the definition provided in Section 1 of the Benefits Agreement, plaintiffs ceased to be "Eligible Employees" when their division was sold to ADP. Plaintiffs were no longer SBC or CDC employees, and it is not contended that ADP is an "Other Subsidiary" of CDC. Nor is it contended that ADP qualifies as a successor under § 9 of the Benefits Agreement such that the obligations of the Benefits Agreement would be binding on it. On the contrary, plaintiffs argue that CDC retains the obligation to provide continued benefits precisely because such obligation did not pass to ADP.

Plaintiffs cannot and do not dispute our construction of the term "Eligible Employee," but argue instead that the provisions upon which defendant relies do not address the situation at hand. According to plaintiffs, the parties contemplated an irrevocable guarantee of benefits to SBC employees, and not one that could be terminated unilaterally by CDC. This argument must be rejected, as it rests on faulty premises.

First, plaintiffs misread § 7(a) of the Depositary Agreement. A full reading of that paragraph reveals that even the portion which plaintiffs cite in support of their irrevocable guarantee theory applies only to "Eligible Employees," as defined in the Benefits Agreement:

IBM, CDC, SBC and the Depositary hereby acknowledge that the provisions of Sections 2 and 4(b) and the remaining provisions of this Section 7 *are intended for the benefit of Eligible Employees (as*

---

**2.** The sale of BTSI to ADP on June 30, 1985 involved recorded assets of $2.1 million, of which only $631 is attributable to SBC. In addition, of the 165 people employed by BTSI at the time of ADP's acquisition, the 16 plaintiffs in the instant action are the only ones who had previously been employed by SBC. At the time of the sale, the vast majority of former SBC assets and employees were contained in two other CDC divisions: Control Data Business Centers ("CDBC") and Network Information Services ("NIS"). Those divisions had recorded assets of $15.6 million and $28.8 million respectively as of the date of the sale to ADP. (Aff. of Stephen T. Disher ¶ 8)

**3.** Plaintiffs cite various authorities dealing with construction of contracts, all of which defendants maintain are irrelevant in an ERISA action. As the language of the Benefits Agreement is clear and unequivocal, we need not determine whether the standards governing interpretation of other contracts are applicable to an ERISA Plan.

*defined in the Benefits Agreement)* and, hence such parties hereby confirm and agree that this Agreement is made for such benefit so far as such provisions are concerned and that the arrangements made herein in that respect are irrevocable and may not (except as hereinafter in this Section 7 specifically provided) be changed without the consent of such beneficiaries or their class representative as determined by law (emphasis supplied).

Since plaintiffs were no longer "Eligible Employees" after the sale of their division to ADP, they can draw no support from the Depositary Agreement. That agreement in no way expands or alters the benefits available under the Benefits Agreement.

Second, plaintiffs erroneously reason that since they received guaranteed benefits as a result of the IBM sale of SBC, similar guarantees were meant to apply to all future sales of SBC. However, plaintiffs' conclusion does not follow from their premise. The past practice is consistent with § 9 of the Benefits Agreement, which obligates a successor to "all or substantially all the assets" of SBC to continue the benefits which plaintiffs received at IBM. When IBM sold SBC in 1973, CDC did acquire all or substantially all of SBC's assets, and therefore would have been bound pursuant to § 9 of the Benefits Agreement. Hence, it appears that the parties did contemplate the possibility of future sales, but, contrary to plaintiffs' theory, decided that the obligation to provide continued benefits would be limited to situations similar to the IBM—CDC sale, in which the successor acquired all or substantially all of SBC's or CDC's assets.

Finally, plaintiffs assert that the parties never intended that CDC would be able to divest itself of its obligations to former SBC employees by dismantling the unit and selling off the pieces. We find this argument unpersuasive. If the business transactions which resulted in plaintiffs' disenfranchisement had been motivated by a desire to rid defendant of plaintiff employees or to eliminate the burden of providing unique benefits to them, we are certain that equity would find a way to rectify such an injustice. However, there is not a scintilla of evidence before us to suggest that defendant had any such motive. Moreover, it is inconceivable that the sophisticated lawyers who drafted the documents necessary to effectuate the complex multi-million dollar sale of SBC would ignore such a predictable and commonplace phenomenon of corporate life as reorganization, particularly when the very transaction in which they were engaged concerned the sale of a division by one corporation to another. On the contrary, the plan reveals that the parties indeed considered the possibility of a future sale of SBC, and determined that plaintiffs' benefits should continue only in the event of "merger, consolidation, or ... acquisition of all or substantially all the assets" of SBC or CDC.

In brief, we simply cannot read into the contract what is not there. As defendant's decision to deny plaintiffs' request for continued benefits was not arbitrary or capricious, defendant Control Data Corporation's motion for summary judgment on Count II of the Complaint is granted.[4] The Clerk is directed to enter judgment dismissing the Complaint in its entirety.

SO ORDERED.

---

**4.** Plaintiffs' Complaint also asserted claims under 29 U.S.C. §§ 1104 and 1106. These claims were not addressed in the opinion of the Court of Appeals remanding the case to us. However, when defendant inquired about them at a status conference held February 25, 1988, plaintiffs' counsel indicated that he would review them and decide whether to pursue them. Since plaintiffs addressed only the second count of the Complaint on the instant motion, and counsel has never communicated either to us or (as far as we know) to defendant's counsel an intention to pursue the remaining counts, we deem them abandoned.