**Grady ROPER and Robert L. Benton, Plaintiffs–Appellants,**

v.

**PULLMAN STANDARD, et al., Defendants–Appellees.**

No. 87–7771.

United States Court of Appeals, Eleventh Circuit.

Nov. 2, 1988.

Robin L. Burrell, Birmingham, Ala., for plaintiffs-appellants.

Michael C. Towers, Robert Christenson, Fisher & Phillips, Atlanta, Ga., for defendants-appellees.

Before RONEY, Chief Judge, JOHNSON and SMITH *, Circuit Judges.

PER CURIAM:

Plaintiffs Grady Roper and Robert Benton lost their jobs when defendant Pullman Standard, Inc. permanently closed its manufacturing plant in Bessemer, Alabama. At the end of their two year lay-off periods, plaintiffs applied for retirement benefits under the "70/80" provision of Pullman's pension plan. Pullman denied plaintiffs' retirement benefits because it found that they had not met the age/service requirements of the plan. Alleging that the 70/80 plan thus violated the provision 29 U.S.C.A. § 1056(a) of the Employee Retirement Income Security Act (ERISA), plaintiffs filed suit against Pullman. The question of the validity of the plan under ERISA was submitted to the district court on cross motions for summary judgment. The district court entered judgment for Pullman. We affirm.

The 70/80 plan provides benefits to employees who have had their service to the company interrupted or are otherwise absent from work by reason of plant shutdown, lay-off or disability and (a) have reached the age of 55 and have at least 15 years of service, for a combined age/service total of at least 70, or (b) have combined age/service total of 80 years or more.

At the end of their two-year lay-off periods, Roper was 52 with 17 years of service and Benton was 54 with 19 years of service. Pullman denied benefits to plaintiffs because neither had reached the age of 55 and their combined age/service totals were less than 80.

Plaintiffs contend that, under the controlling provisions of ERISA, they should receive 70/80 benefits when they turn 55. Plaintiffs rely on 29 U.S.C.A. § 1056(a), which provides in pertinent part:

> In the case of a plan which provides for the payment of an early retirement benefit, such plan shall provide that a participant who satisfied the service requirements for such early retirement benefit, but separated from the service (with any nonforfeitable right to an accrued benefit) before satisfying the age requirement for such early retirement benefit, is entitled upon satisfaction of such age requirement to receive a benefit not less than the benefit to which he would be entitled at the normal retirement age, actuarially reduced under regulations prescribed by the Secretary of the Treasury.

Plaintiffs argue that the 70/80 plan violates this statute because it does not allow employees to receive early retirement benefits when they have met the service but not the age requirement prior to their separation from the company.

The district court held that section 1056(a) was inapplicable to the 70/80 plan because the "plan does not provide the plaintiffs a nonforfeitable pension benefit" as contemplated by the statute. The court found that the benefits under the 70/80 plan were forfeitable since the plan "encompasses other factors besides age and years of service consideration." The "other factors" referred to by the district court that are necessary to implement the benefits are the conditions of separation: plant

---

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

shutdown, lay-off or disability. Just reaching the age and service requirements alone does not create any benefits entitlement. Only when the age and service provisions coalesce with such a reason for service interruption are benefits available under this provision of the plan.

Agreeing with this analysis, we affirm for the reasons set forth in the district court's opinion, attached hereto as an appendix.

An affirmance based on the rationale employed by the district court, however, leaves one argument on appeal unaddressed. After the district court issued its opinion in this case, the Sixth Circuit decided *Ross v. Pension Plan for Hourly Emp. of SKF Ind.*, 847 F.2d 329 (6th Cir.1988). Pullman relies on this case for suggesting as an alternative ground for affirming the judgment that section 1056(a) applies only to early retirement plans and *Ross* holds that plans such as the 70/80 plan are not early retirement plans.

*Ross* discussed a pension provision similar to the 70/80 plan and determined that it could not be considered an early retirement plan because it contained conditions other than age and service. The court deemed the provision a plant shutdown plan, noting that "[e]arly retirement benefits are generally benefits that become available upon retirement at or after a specified age which is below the normal retirement age, and/or upon completion of a specified period of service." *Ross*, 847 F.2d at 333.

While it is not necessary to our decision to affirm, we agree with Pullman that *Ross* supports the district court's decision. Under the analysis of that case, the 70/80 plan would fall outside the purview of section 1056(a) because it is a plant shutdown plan rather than an early retirement plan.

The analysis employed by the district court and the analysis borrowed from *Ross* are slightly different methods for arriving at the same conclusion: section 1056(a) does not apply to the 70/80 plan because it

contains conditions other than age and service for benefit accrual.

AFFIRMED.

## APPENDIX

Grady Roper and Robert Benton, Plaintiff(s);

-vs.-

Pullman Standard Inc., Defendant.

United States District Court

Northern District of Alabama

Southern Division

No. CV 86-P-1496-S

Nov. 23, 1987

### MEMORANDUM OF OPINION

POINTER, Chief Judge.

Cross motions for summary judgment were filed on behalf of the parties in this action. The motions were taken under submission by this court after the filing of briefs and oral argument by counsel. The motions address the issue of whether the Pension Agreement between the company and the union violates the Employee Retirement Income Security Act (ERISA), specifically, Section 206(a), 29 U.S.C. § 1056(a). For the reasons set forth below, the court is of the opinion that the defendant's motion is due to be GRANTED and that the plaintiff's motion is due to be DENIED.

### FINDINGS OF FACT

Plaintiff, Grady Roper (Roper), was employed by defendant, Pullman Standard, Inc. (Pullman), from February 8, 1965 until he was laid off on September 26, 1980. He was born July 21, 1930. Plaintiff, Robert L. Benton (Benton), was employed by Pullman from February 1, 1963, until he was also laid off on September 19, 1980.[1] He was born on October 21, 1927. As employees, the plaintiffs were participants in the Pension Agreement (the Plan) between Pullman and their union, the United Steel-

---

1. Pursuant to a stipulated motion for consolidation of cases, the court ordered on March 13, 1987 that the two actions be consolidated.

workers of America. Among the pension benefits in the Plan is the "70/80" pension, which provides that

6. Any participant who has not attained the age of sixty-two (62) years and who shall have had at least fifteen (15) years continuous service and (i) shall have attained the age of fifty-five (55) years and whose combined age and years of continuous service therefore equal seventy (70) or more, of (ii) whose combined age and years of continuous service shall equal eighty (80) or more, and

(a) whose continuous service is broken on or after September 30, 1977 by reason of a permanent shutdown of a plant, department or subdivision thereof or who has been absent for two (2) or more years by reason of a layoff or physical disability, or

(b) whose continuous service is not broken and who on or after September 30, 1977 is absent from work by reason of

(1) a layoff resulting form his election to be placed on layoff status pursuant to the provisions of the Labor Agreement applicable to employees affected by a permanent shutdown or

(2) a physical disability or a layoff other than a layoff resulting from an election referred to above and whose return to active employment is declared unlikely by the Company, or

(c) whose continuous service is not broken and who, while on layoff status pursuant to the provisions of the Labor Agreement applicable in the event of a permanent shutdown, accepts a job with the Company and, prior to the expiration of ninety (90) consecutive calendar days from the first day worked on such job, elects to retire, or

(d) who considers that it would be in his interest to retire, and the Company considers that such retirement would likewise be in its interest and it approves an application for retirement under mutually satisfactory conditions,

shall be eligible to retire on or after September 30, 1977 and shall upon his retirement (hereinafter "70/80 retirement") be eligible for a pension computed in accordance with paragraph 7 Section III hereof, provided, however, that the participant shall have met the applicable age and service combination specified in (i) or (ii) of this paragraph 6 as of the date of his retirement but not later than the date (on or after September 30, 1977) (1) of his termination by reason of a permanent shutdown of a plant, department or subdivision thereof or (2) on which he shall have been continuously absent for two (2) years by reason of a layoff or physical disability.

(Plan p. 37). Both plaintiffs applied for retirement benefits under the "70/80 retirement", but were denied benefits. Both plaintiffs were laid off from work in September of 1980. They were given the option to elect layoff status or accept severance pay. Both chose layoff status in order to continue to acquire pension service for twenty-four months.[2] In September of 1982, each plaintiff had been on layoff for two years. At that time, Roper was fifty-two (52) years old with seventeen (17) years of service. Benton was fifty-four (54) years old with nineteen (19) years of service. Pullman denied the plaintiffs' requests for "70/80 retirement" because neither had met the age-service plateau by the time of the plant shutdown or at the expiration of their two years absence from the plant because of the layoff.

## CONCLUSIONS OF LAW

Given these facts, the plaintiffs contend that the "70/80" pension, as applied to the plaintiffs and on its face, violates 29 U.S.C. § 1056(a). The sub-section provides, in pertinent part, that

[i]n the case of a plan which provides for the payment of an early retirement benefit, such plan shall provide that a participant who satisfied the service requirements for such early retirement benefit, but separated from the service (with any nonforfeitable right to an accrued bene-

**2.** Apparently, there is some dispute as to whether 24 months is the maximum service time that

can be accrued, however, this issue is not before the court, and thus, will not be addressed.

fit) before satisfying the age requirement for such early retirement benefit, is entitled upon satisfaction of such age requirement to receive a benefit not less than the benefit to which he would be entitled at the normal retirement age, actuarially reduced under regulations prescribed by the Secretary of the Treasury.

*Id.*[3] The plaintiffs argue that the "70/80" pension does not allow one to receive the early benefits when they have met the service requirement but not the age requirement before separation from service. The plaintiffs suggest that because Pullman provides for normal retirement at age 65, then the "70/80" is, thus, their "early retirement" pension. Furthermore, the plaintiffs argue that they had a nonforfeitable right to the benefits as required by § 1056(a). In claiming that the right is nonforfeitable, the plaintiffs rely on 29 U.S.C. § 1002(19), which defines the term, as follows:

(19) The term "nonforfeitable" when used with respect to a pension benefit or right means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan. For purposes of this paragraph, a right to an accrued benefit derived from employer contributions shall not be treated as forfeitable merely because the plan contains a provision described in section 1053(a)(3) of this title.

*Id.*[4] The defendant, on the other hand, argues that § 1056(a) is not applicable to their "70/80 retirement," as this pension does not provide a "nonforfeitable," "early retirement" benefit as is contemplated by the section.[5]

The decision as to what pension benefits will be provided in a pension plan is left to the private parties creating the plan. *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 511, 101 S.Ct. 1895, 1900, 68 L.Ed.2d 402 (1981). ERISA imposes no obligation on a plan to pay benefits before an employee reaches normal retirement age. *Fine v. Semet*, 699 F.2d 1091, 1093 (11th Cir.1983). If there is any right to earlier benefits, it must be found in the individual agreements. *Id.* Section 1056(a) confirms this— it is conditioned on the plan giving one a "nonforfeitable right to an accrued benefit." *See* 15 U.S.C. § 1056(a). Accordingly, the issue presented is whether the "70/80" pension provides for a "nonforfeitable," benefit as contemplated by § 1056(a).

In *Sutton v. Weirton Steel Division*, 567 F.Supp. 1184 (N.D.W.Va.1983), *aff'd.* 724 F.2d 406 (4th Cir.1983), the issue presented was whether proposed amendments to "70/80 retirement" and "rule of 65 retirement" violated ERISA's minimum requirement for vesting, accrued benefits, or nonforfeitability.[6] *Id.* at 1195. The court held that the "70/80" or "rule of 65" retirement could not be considered nonforfeitable because the eligibility requirements are "conditional and in the nature of early retirement benefits and cannot be considered

**3.** The plaintiffs assert that *Apponi v. Sunshine Biscuits, Inc.*, 652 F.2d 643 (6th Cir.1981), is squarely on point. In *Apponi*, the court stated that had ERISA been applicable, then the employees (with 15 years of service but who were laid off prior to attaining 55 years of age) seeking early retirement benefits could not be cutoff given § 1056(a). *Id.* at 647 n. 1. However, the plan there simply provided that one was eligible once he reached age 55 with 15 years of service. *Id.* at 646. Again, in *Baker v. Otis Elevator Co.*, 609 F.2d 686 (3rd Cir.1979), the court there was construing a pension which is not similar to the one at hand, but was like the one in *Apponi. See Baker* 609 F.2d at 688.

**4.** The plaintiff also looks to 29 U.S.C. § 1053(a)(2)(C)(ii), however, this section ad-

dresses the non-forfeitability requirements of an employees' right to his normal retirement benefits.

**5.** The defendants also argued in their brief submitted to the court that their motion was due to be granted on two other grounds—failure to exhaust administrative remedies and the statute of limitations. However, given the decision on the merits, the court will not address those arguments.

**6.** The modifications were a product of the proposed employee buyout plan for the steel division. The companion case is *Dhayer v. Weirton Steel Division*, 571 F.Supp. 316 (N.D.W.Va.1983), *aff'd* 724 F.2d 406 (4th Cir.1983).

nonforfeitable or as an accrued benefit." *Id.* at 1196. The court considered the potential applicability of § 1056(a), but found that it did not require a contrary result. *Id.*

The plaintiffs argue that the *Sutton* line of cases are distinguishable because the court only held that ERISA did not prohibit modification of early retirement benefits. They argue that the issue here is whether the plan as it exists—at a time when the service requirements have been met—is violative of § 1056(a).[7] Furthermore, the plaintiffs contend that, here, their claims had ripened into an unconditional and legally enforceable right because § 1056(a) *modifies* the plan to provide for eligibility once they attained the requisite age of fifty-five (55). (See Plaintiffs' Brief in Response, p. 7–8).

Nevertheless, the "70/80" pension, and the denial of the claim for benefits thereunder, is not violative of § 1056(a) for the same reason that the modifications to the "70/80" pension were not found to be violative of ERISA in the *Sutton* case. The "70/80" pension does not provide the plaintiffs a nonforfeitable pension benefit or right because it is not a benefit "which arises from the participant's service, which is unconditional ...". *See* 15 U.S.C. § 1002(19). The "70/80" pension encompasses other factors besides an age and years of service consideration. *See Sutton*, 567 F.Supp. at 1194 ("other factors" involved in determining eligibility). The plain language of § 1056(a) only contemplates "modifying" the provisions of a plan where a participant has a nonforfeitable right pursuant to the terms of the respective plan. *See Fine*, 699 F.2d at 1093 (any right to earlier benefits must be found in the individual agreements).

The defendant suggests, and this court agrees, that § 1056(a) applies to their deferred vested pension provisions found in Section II(7)-(8) and III(14)–(15) of the Plan, which provides actuarially reduced early retirement benefits for early retirement at age sixty (60) for participants meeting the service requirements, but who are terminated from employment before attaining the requisite age. Accordingly, the court finds that the "70/80 retirement" does not violate 15 U.S.C. § 1056(a), therefore, because there is no genuine issue of material fact, the court hereby GRANTS the defendant's motion for summary judgment.

---

7. The plaintiffs refer to the *Dhayer* court's statement that

[n]o issue concerning any individual Plaintiff's immediate right to an early retirement or severance pay benefit is decided.... 571 F.Supp. at 322.