**Margaret C. BLANK, et al., Plaintiffs,**

v.

**BETHLEHEM STEEL CORPORATION, and Bethlehem 1985 Salaried Pension Plan, a foreign corporation, Defendants.**

**No. 88–867–Civ–J–12.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Feb. 9, 1990.

John F. MacLennan, Jacksonville, Fla., for plaintiffs.

Karr Tuttle Campbell, and Richard J. Omato, Seattle, Wash., E. Lanny Russell, Jacksonville, Fla., for defendants.

## ORDER GRANTING SUMMARY JUDGMENT

MELTON, District Judge.

This cause is before the Court on defendants' Motion for Summary Judgment and/or Dismissal, filed herein on September 5, 1989. Plaintiffs responded with a memorandum in opposition to the motion, filed herein on September 29, 1989. Defendants submitted a reply memorandum, filed herein on October 26, 1989. The Court will grant defendants' motion.[1]

This action involves the denial of plaintiffs' claims for retirement benefits under the terms of the Bethlehem 1985 Salaried Pension Plan ("the Plan"). Plaintiffs are former salaried employees of defendant Bethlehem Steel Corporation ("Bethlehem Steel") in its Buffalo Tank Division. As such, they were participants in the Plan. On August 26, 1986, Bethlehem Steel consummated the sale of its Buffalo Tank Division to Buffalo Tank Corporation. On that date, the parties agree, each plaintiff had at least twenty years of continuous service with Bethlehem Steel and had not reached the age of fifty-five years. None of the plaintiffs were offered transfers to another position with Bethlehem Steel. All went to work for Buffalo Tank Corporation, although one plaintiff, Robert Perry, has since been laid off by the successor corporation.

The Plan provides for a retirement benefit known as Rule–of–65 Retirement. The relevant portions of paragraph 2.7 state:

Any participant (i) who shall have had at least 20 years of continuous service as of his last day worked, (ii) who has not attained the age of 55 years, and (iii) whose combined age and years of continuous service shall equal 65 or more but less than 80, and

(a) whose continuous service is broken by reason of a layoff or disability, or

(b) whose continuous service is not broken and who is absent from work by reason of a layoff· resulting from his election to be placed on layoff status as a result of a permanent shutdown of a plant, department or subdivision thereof, ...

and who has not been offered suitable long-term employment as such employment is determined in accordance with rules and regulations adopted by the General Pension Board, shall be eligible to retire on or after January 1, 1986, and shall upon his retirement (hereinafter "rule–of–65 retirement") be eligible for a pension; ....

Plaintiffs applied for these benefits. Their claims were denied and the appeals of their claims were denied. The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, et. seq., and the present action is brought pursuant to 29 U.S.C. § 1132.

Plaintiffs have two theories under which they are entitled to relief. Under one theo-

---

1. Defendants also moved to strike portions of plaintiffs' memorandum on the ground that unsupported factual statements were contained therein, said motion filed herein on October 10, 1989. Plaintiffs responded to the motion to strike with a memorandum containing verification of some factual assertions, filed herein on October 27, 1989. At the pretrial conference held October 19, 1989, the Court indicated that it would deny the formality of defendants' mo-tion while respecting the substance thereof. That is, the Court will not engage in the exercise of striking any portion of plaintiffs' memorandum, but to the extent that a purported disputed issue of material fact asserted therein lacks the kind of evidentiary support appropriate to the opposition of a motion for summary judgment the Court will not consider that fact in its ruling.

ry, the Rule–of–65 Retirement benefits are accrued benefits that the Plan cannot lawfully reduce. Under the other theory, the benefits are not accrued, but the action of the Plan's General Pension Board in denying benefits is, depending on the standard of review, either wrong as a de novo matter, or arbitrary and capricious.

Defendants move for summary judgment on the grounds that Rule–of–65 Retirement is an unaccrued benefit that the Board may lawfully eliminate. Defendants argue that the decision to make Rule–of–65 Retirement unavailable to plaintiffs was the exercise of discretion by the General Pension Board. This exercise of discretion, defendants urge, is reviewed by the arbitrary and capricious standard and it passes muster under that standard.

Whether Rule–of–65 Retirement benefits are accrued benefits or not is a question of law decided by the Court through construction of the relevant documents. *See Roper v. Pullman Standard,* 859 F.2d 1472, 1473–74 (11th Cir.1988). Whether the standard of review in this Court is the de novo standard or the arbitrary and capricious standard also is a question of law. *See Baker v. Big Star Div.,* 893 F.2d 288, 290–92 (11th Cir.1989).[2] Whether the General Pension Board acted in an arbitrary and capricious manner is a question of law that rests on factual findings. *See Jett v. Blue Cross & Blue Shield of Ala.,* 890 F.2d 1137, 1140–41 (11th Cir.1989) (Johnson, J., concurring and dissenting).

The first two issues, then, are readily resolvable on summary judgment. The final issue also is susceptible to summary judgment in this case because the material issues of fact are not in dispute. The Court, of course, gives plaintiffs the benefit of every reasonable inference to be drawn from the evidence. *See Spence v. Zimmerman,* 873 F.2d 256, 257 (11th Cir. 1989). In the usual instance, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a [trier of fact] to return a verdict for that

party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Because the conclusion concerning the arbitrary and capricious standard is committed to the Court and the record does not suggest factual issues that turn on credibility questions or reveal conflicts that are resolvable only through trial testimony, summary judgment is an appropriate vehicle to resolve the issue.

## ACCRUED OR UNACCRUED BENEFIT

The Plan, as reflected in the previously quoted portion, confers Rule–of–65 Retirement benefits in two relevant instances. Under paragraph 2.07(a), a break in continuous service occasioned by a layoff triggers the benefit for an employee who otherwise qualifies as to age and service. Under paragraph 2.07(b), no break in continuous service is necessary, but the otherwise eligible employee must have elected to be placed on layoff status following the permanent shutdown of a plant. Additionally, in order to complete the eligibility requirements of Rule–of–65 benefits, an employee who reaches the requisite age and service combination must not have been offered suitable long-term employment.

Defendants urge that they did not violate ERISA by eliminating Rule–of–65 Retirement benefits because those benefits were not accrued and therefore subject to discontinuation. Plaintiffs maintain that the benefits are accrued. This distinction is central because "the fiduciary provisions of ERISA are not implicated in the sale of a business merely because the terms of sale will affect contingent and non-vested future retirement benefits." *Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1471 (11th Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987).

ERISA imposes no obligation to pay benefits before an employee reaches normal

**2.** The *Baker* decision originally was issued November 30, 1989, and published at 888 F.2d 1557. The opinion was amended January 29, 1990, and the original opinion was withdrawn to be published as amended. The Court's citation is to the amended opinion.

retirement age. *Fine v. Semet,* 699 F.2d 1091, 1093 (11th Cir.1983). "The accrued benefits secured by ERISA do not encompass unfunded, contingent early retirement benefits or severance benefits." *Sutton v. Weirton Steel Div.,* 724 F.2d 406, 410 (4th Cir.1983), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984); *see Blessitt v. Retirement Plan for Employees of Dixie Engine Co.,* 848 F.2d 1164, 1173 n. 21 (11th Cir.1988) (en banc) ("The prerequisites for entitlement to early retirement benefits and normal pension benefits are discreet and distinguishable."); *Phillips,* 799 F.2d at 1471 (fiduciary duty not breached by elimination of contingent and non-vested future retirement benefits, citing *Sutton* with approval). The contingent nature of the Rule–of–65 Retirement benefits is plain from the condition that eligibility be preceded by plant shutdown, layoff or disability. *Cf. Roper,* 859 F.2d at 1473–74. Termination of the benefits, then, does not violate the ERISA prohibition against the termination of accrued benefits.[3] *Cf. Hlinka v. Bethlehem Steel Corp.,* 863 F.2d 279, 283–85 (3d Cir.1988) (interpreting the Plan under consideration here and holding that 70/80 retirement benefit is not an accrued benefit).

Plaintiffs have urged the authority of *Amato v. Western Union International, Inc.,* 773 F.2d 1402 (2d Cir.1985), *cert. dismissed,* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986), in support of their assertion that the Rule–of–65 Retirement benefits are accrued. That case, however, does not address the issue present in this case. The issue in *Amato* was stated as "whether an employer may terminate a plan's unreduced, funded early retirement benefits *that are not contingent on an external event.*" *Id.* at 1413 (emphasis added). The caveat in this statement, intended by the court to distinguish its case from *Sutton,* likewise distinguishes *Amato* from this case.[4] *See also Ashenbaugh v.*

---

**3.** The Court also has considered the application of 29 U.S.C. § 1054(g), a provision enacted by Congress in 1984 to protect accrued early retirement benefits. The result is unchanged. *See Ross v. Pension Plan for Hourly Employees of SKF Indus.,* 847 F.2d 329, 332–34 (6th Cir.1988) (plant shutdown benefits not within protection of § 1054(g)), *cited with approval in Roper,* 859 F.2d at 1474.

Defendants argue the provision does not apply because the amendment to the Plan to authorize reductions was enacted before the effective date specified in the Retirement Equity Act of 1984. The Court is of the opinion that the new provision is the controlling law to consider. Although it applies to amendments adopted after July 30, 1984 and the amendment in this case purportedly took place during 1983, two other facts suggest the applicability of the provision. First, the Plan is titled "Bethlehem 1985 Salaried Pension Plan," placing it in the relevant time period. Second, and more importantly, the plan amendment adopted in 1983 did not cause the decrease of benefits of which plaintiffs complain; rather, the 1983 amendment authorized the General Pension Board to adopt rules and regulations in 1986. The 1983 amendment was void of content until implemented in 1986, a situation which should be treated as if the amendment occurred at the later date. As noted above, however, the result is not affected by the application of 29 U.S.C. § 1054(g).

**4.** Plaintiffs additionally submit a pre-ERISA state court decision, *Conner v. Phoenix Steel Corp.,* 249 A.2d 866 (Del.1969), and a decision by the Appeals Board of the Pension Benefit Guaranty Corporation ("PBGC"), *Appeal of James Glenn,* No. 84–187 (Dec. 30, 1985). Plaintiffs argue that *Conner,* interpreting a pension plan identical in many ways to the language in the Rule–of–65 Retirement benefit at issue here, held that interpretation of the term "layoff" compels the conclusion that continuous service was broken here. PBGC relied on *Conner* in its *Glenn* decision, an appeal decided under a plan by the same employer and using identical language as the one in *Conner.*

*Conner* does not apply in this case for several reasons. First, ERISA superceded the older line of state court cases, such as *Conner,* that held severance benefits ripen into a contract due on the sale of a business. *See Jung v. FMC Corp.,* 755 F.2d 708, 714 (9th Cir.1985); *see also Simmons v. Diamond Shamrock Corp.,* 844 F.2d 517, 520 (8th Cir.1988) (prior state court decision interpreting plan does not affect review under ERISA). Second, the plan in *Conner* did not confer discretion on a body, such as the General Pension Board, to construe the eligibility through the promulgation of rules and regulations. Third, the central premise in *Conner* is that the court must construe an ambiguity in terms of the plan, *see* 249 A.2d at 868; this premise has no place "[i]f the plan ... give[s] the employer or administrator discretionary or final authority to construe uncertain terms," *see Firestone,* 109 S.Ct. at 955 (construing, among others, *Conner* ). Last, *Conner* resolves the claim of a single employee who was discharged without cause. It does not address the sale of a business as an ongoing concern with the carry-over of the workforce at substantially the same rate of pay and benefits.

*Crucible Inc., 1975 Salaried Retirement Plan,* 854 F.2d 1516, 1525–27 (3d Cir.1988) (*Amato* is not consistent with *Sutton* line of cases).

## STANDARD OF REVIEW

█ Having concluded that ERISA has not been per se violated by the adoption of rules that eliminated plaintiffs' eligibility for Rule–of–65 Retirement benefits, the Court must review the decision of the General Pension Board to deny benefits. The parties disagree on the standard of review to apply. Plaintiffs assert review must be done de novo; defendants propose use of the arbitrary and capricious standard. The resolution of this dispute lies in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), and its young progeny.

In *Firestone,* the Supreme Court established de novo judicial review of an ERISA benefits denial decision "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* 109 S.Ct. at 956. The gist of Eleventh Circuit cases interpreting *Firestone* urges the conclusion that express language of discretionary authority is necessary before the arbitrary and capricious standard applies. *See Baker,* 893 F.2d at 291; *Moon v. American Home Assur. Co.,* 888 F.2d 86, 88–89 (11th Cir. 1989); *Guy v. Southeastern Iron Workers' Welfare Fund,* 877 F.2d 37, 39 (11th Cir. 1989). Of course, the discretionary authority must be conferred in the relevant area of decisionmaking.

The Plan provides for the Plan Administrator, the Secretary of the General Pension Board, "[t]o grant such pensions as are provided under this Plan" and "[t]o make and enforce such rules and regula-

tions ... as the Plan Administrator shall deem necessary for the efficient administration of this Plan, and to decide such questions as may arise in connection with the operation of this Plan." Plan, ¶ 8.1. Moreover, the General Pension Board is empowered to make "final and binding" decisions "to the extent permitted under ERISA" when a difference arises between the Plan Administrator and a participant on "any matter arising under this Plan, including the right to receive benefits or the amount of such benefits...." *Id.*

Further, the Plan expressly confers discretion on the General Pension Board regarding the construction of the Rule–of–65 Retirement benefits in two respects. As quoted previously, the Board is vested with discretion to determine what constitutes "suitable long-term employment" through rules and regulations. *Id.,* ¶ 2.7. In addition, the Board possesses specialized authority to define continuous service in the event of the sale of a division, as stated in paragraph 5.3(c):

> Service with another employer to which an Employing Company sells or transfers all or part of a ... division ... of such Employing Company may be credited as continuous service under this Plan in accordance with and for such purposes as may be set forth in rules and regulations adopted by the General Pension Board with respect to each such sale or transfer.

The Board adopted rules and regulations purporting to construe the relevant plan provisions in connection with the sale of the Buffalo Tank Division.

In light of the foregoing provisions, the Court concludes that the General Pension Board's decisions must be reviewed under the arbitrary and capricious standard. The

---

*Glenn* seemingly has greater application because it was decided under ERISA. This facet of the administrative opinion is, however, illusory. The majority conforms interpretation of the Phoenix Steel salaried employees' benefit plan to the *Conner* decision because the employer knew the meaning conferred on the plan in that case and it took no steps to distance itself from that meaning when the plan was revised to satisfy ERISA. The majority opinion of the

PBGC Appeals Board, at page 6, confines the decision to "the exceptional circumstances of the case" and the dissenting opinion wisely counsels that the decision "should not stand as precedent for other Rule–of–65 benefit eligibility determinations under the Phoenix Steel Plan, or in other pension plans with provisions similar to the Rule–of–65." The Court concurs in the dissent's recommendation concerning the weight to accord *Glenn.*

discretion conferred on the Plan Administrator and the General Pension Board is broad and express. *Cf. de Nobel v. Vitro Corp.,* 885 F.2d 1180, 1186–87 (4th Cir. 1989) (power to "determine all benefits and resolve all questions pertaining to administration, interpretation and application of the Plan provisions" invoked arbitrary and capricious standard of review). The power to promulgate rules and regulations, stated both in broad and specific terms, is a strong expression of discretionary authority. *See Boyd v. Trustees of United Mineworkers Health & Retirement Fund,* 873 F.2d 57, 59 (4th Cir.1989), *cited with approval in Baker,* 893 F.2d at 292, n. 5. The Court therefore conducts its review from the perspective of the arbitrary and capricious standard.

## ARBITRARY AND CAPRICIOUS

■ The Court's task is to determine whether the General Pension Board has interpreted the Plan rationally and in good faith, using as guidance such factors as the uniformity of the Board's construction, the reasonableness of the Board's reading of the Plan, and the extent to which concern over the future financial health of the Plan may underlie the interpretation. *See Guy,* 877 F.2d at 39; *Anderson v. Ciba–Geigy Corp.,* 759 F.2d 1518, 1522 (11th Cir.), *cert. denied,* 474 U.S. 995, 106 S.Ct. 410, 88 L.Ed.2d 360 (1985). Plaintiffs bear the burden to demonstrate that the Board's decisions were arbitrary and capricious. On defendants' motion for summary judgment, plaintiffs must demonstrate sufficient material facts in dispute that the Court could reasonably infer that plaintiffs would carry their burden at trial.

The General Pension Board in effect placed Buffalo Tank Division salaried employees under paragraph 2.07(b) of the Plan. The rules and regulations adopted August 26, 1986, treat participants who cannot elect a voluntary pension at the time of sale and who go to work for Buffalo Tank Corporation as employees who have not broken continuous service. For their service at the successor corporation, they continue to receive continuous service credit under the Plan for purposes other than the calculation of the amount of their benefits.

The General Pension Board's handling of the continuous service issue is consistent with the terms of the sale between Bethlehem Steel and Buffalo Tank Corporation. Article 8, section 8.01(f) of the sale agreement directed Bethlehem Steel to take precisely the steps it took regarding the Plan. In addition, section 8.01(b) committed Buffalo Tank Corporation to carry over pay and benefits at rates "substantially the same" as those under Bethlehem Steel, section 8.01(e) allocated the liability for severance benefits between the parties to the sale, and section 8.01(d) apportioned the responsibility for paying claims arising under Bethlehem Steel's benefit plans. In short, the sale agreement established parameters for the administration of the Plan in accordance with the professed object of accomplishing the sale as an ongoing business.

Focusing on this perspective, it becomes apparent that the General Pension Board did not act in an arbitrary and capricious manner when it drafted regulations that rendered plaintiffs ineligible for the Rule-of–65 Retirement benefits and then enforced those regulations against plaintiffs' claims. The Board acted in concert with the sales agreement negotiated for this particular division sale. Given the structure of the sale, it was not unreasonable for the General Pension Board to define the sale as something other than a permanent shutdown of a division. Indeed, it would seem odd to treat this sale, with its promise of the continuation of operations at comparable rates of pay and benefits, as a "permanent shutdown" as that phrase is commonly understood. *Cf. Sejman v. Warner–Lambert Co.,* 889 F.2d 1346, 1348–50 (4th Cir.1989); *Lakey v. Remington Arms Co.,* 874 F.2d 541, 544–45 (8th Cir.1989); *Young v. Standard Oil (Indiana),* 849 F.2d 1039, 1045–48 (7th Cir.1988); *Accardi v. Control Data Corp.,* 836 F.2d 126, 128–29 (2d Cir.1987); *Adcock v. Firestone Tire & Rubber Co.,* 822 F.2d 623, 626–27 (6th Cir.1987); *Jung v. FMC Corp.,* 755 F.2d 708, 712–15 (9th Cir.1985).

This discussion highlights the appearance of a rational and good faith interpre-

tation of the Plan. Plaintiffs do not posit any internal inconsistencies in the construction of the Plan; rather, their primary bone of contention is a perceived inconsistency with other sales of assets by Bethlehem Steel. This alleged inconsistency the Court need not resolve. The Plan expressly directs the General Pension Board to promulgate rules and regulations concerning service continuity for each sale. Consequently, the Plan contemplates some degree of inconsistency among the treatment of employees from sale to sale. Plaintiffs can raise a reasonable inference that the alleged inconsistencies rise to the level of arbitrary and capricious only if they come forward with proof tending to show that the sales are sufficiently alike that different treatment is plainly unreasonable. This burden has not been met.[5] *See Adcock*, 822 F.2d at 626. Indeed, two examples which plaintiffs urge the Court to consider, the Broyhill and Associates sale (documented by a letter dated October 12, 1987) and the Panther Valley sale (documented by a press release bearing a February 27, 1989 date), took place subsequent to the Buffalo Tank Division sale. The General Pension Board cannot be faulted for arbitrary and capricious action when the alleged inconsistency arose subsequent to the action which is under challenge.

**5.** The Court alternatively finds that the statement of admitted facts in the Pretrial Stipulation forecloses any genuine dispute over an issue of material fact concerning other asset sales. The parties stipulate that all of the sales arranged as sales of an ongoing business provided for compensation and benefit protections for employees and did not allow for Rule–of–65 benefits, while all of the sales arranged as sales of permanently shutdown assets, regardless of whether the operation actually shut down, had no protections for pay and benefits and allowed for Rule–of–65 benefits. The distinction drawn between the two classes of sales easily passes scrutiny.

**6.** Plaintiffs employ a familiar literary reference to sum up their position concerning the Board's authority to define the treatment of severance benefits. The quotation from Lewis Carroll's *Through the Looking Glass* is "a frequently cited source of authority on and about the judicial process," *Director, OWCP v. Mangifest*, 826 F.2d 1318, 1334 (3d Cir.1987) (Weis, J., concurring), but "Lewis Carroll would likely roll over in his grave," *Claussen v. Aetna Casualty & Surety Co.*,

The reasonableness of the General Pension Board's construction of the Plan should now seem apparent. The Board withheld severance benefits in circumstances where employees faced no real prospect of unemployment or reduced compensation and benefits as a result of the sale. *Cf. Sly v. P.R. Mallory & Co.*, 712 F.2d 1209, 1211 (7th Cir.1983) ("severance pay is generally intended to tide an employee over while seeking a new job"); *Bowman v. Firestone Tire & Rubber Co.*, 724 F.Supp. 493, 501 (N.D.Ohio 1989) (payment of severance benefits in instances where successor corporation will likely continue to operate is designed as compensation for possibility of lower pay or benefits). Payment of Rule–of–65 benefits to plaintiffs would be an obvious windfall; avoiding this result is a clearly reasonable objective. *See Agee v. Armour Foods Co.*, 672 F.Supp. 1210, 1219 (W.D.Mo.1986), *aff'd*, 834 F.2d 144 (8th Cir.1987). Plaintiffs were never misled to believe that they would receive Rule–of–65 benefits; their notice of the unavailability of the benefits weighs in favor of the Board's interpretation. *See Anderson*, 759 F.2d at 1522–23. Plaintiffs have not claimed, other than by implication through their inconsistency argument,[6] that the Board has engaged in an unreasonable interpretation.

676 F.Supp. 1571, 1580 (S.D.Ga.1987) (Edenfield, J.), were he to examine many of the arguments for which it is employed. The reference is incomplete. It reads, in full:

"When *I* use a word," Humpty Dumpty said in rather a scornful tone, "it means just what I choose it to mean—neither more nor less." "The question is," said Alice, "whether you *can* make words mean different things." "The question is," said Humpty Dumpty, "which is to be master—that's all."

The point being, "Words are the servant of men, not their masters." *Handschu v. Special Services Div.*, 605 F.Supp. 1384, 1409 (S.D.N.Y.1985) (Haight, J.). The judicial role often is to take control of the words from persons who lack or misuse the authority to define the words. *E.g., Langer Roofing & Sheet Metal, Inc. v. Secretary of Labor*, 524 F.2d 1337, 1339 (7th Cir.1975). In other cases, the Court should recognize that the power to define the meaning of the words has been committed to some other person or institution and defer accordingly. *See, e.g., United States v. Kindrick*, 576 F.2d 675, 677 & n. 2 (5th Cir.1978). This is a case in the latter category;

Based on the foregoing, the Court concludes that the General Pension Board acted within its discretion when it established and enforced eligibility criteria for the Rule–of–65 Retirement benefits, as adapted for the sale of the Buffalo Tank Division.[7] Accordingly, it is

ORDERED AND ADJUDGED:

1. That defendants' Motion for Summary Judgment and/or Dismissal is hereby granted;

2. That the Clerk of the Court is hereby directed to enter judgment in favor of defendants and dismissing this case, with costs to be assessed according to law; and

3. That the Court retains jurisdiction for the purpose of determining attorney fees, if any, as stipulated by the parties.

DONE AND ORDERED.

the Court recognizes the authority of the Board to construe the indefinite terms of the Plan, confined only by the arbitrary and capricious standard.

7. The parties stipulated to the reservation of jurisdiction by the Court for the purpose of determining attorney fees, if any, for the prevailing party. The parties are reminded that any motion regarding attorney fees is governed by Local Rule 4.18(a) and any memoranda concerning the issue should address the five factors identified by the Eleventh Circuit as guidelines to the award of attorney fees under ERISA, *see Curry v. Contract Fabricators Inc. Profit Sharing Plan,* 891 F.2d 842, 848–50 (11th Cir.1990); *Dixon v. Seafarers' Welfare Plan,* 878 F.2d 1411, 1412–13 (11th Cir.1989); *McKnight v. Southern Life & Health Ins. Co.,* 758 F.2d 1566, 1572 (11th Cir.1985).