**Braxton H. ANDERSON, et al., Plaintiffs-Appellants,**

v.

**CIBA–GEIGY CORPORATION, et al., Defendants-Appellees.**

No. 84–8444.

United States Court of Appeals, Eleventh Circuit.

May 8, 1985.

Rehearing and Rehearing En Banc Denied July 1, 1985.

---

\* Honorable John W. Peck, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

**1.** *Dimenstien v. Bear, Stearns & Co.,* 11th Cir., 759 F.2d 1514 [1985]. .

H. Sanders, Carter, Jr., Atlanta, Ga., for plaintiffs-appellants.

Griffin B. Bell, Jr., Atlanta, Ga., Charles B. Wolf, Chicago, Ill., for defendants-appellees.

Before RONEY and HILL, Circuit Judges, and TUTTLE, Senior Circuit Judge.

RONEY, Circuit Judge:

The issue in this ERISA action is whether severance pay must be given employees whose corporate subdivision is sold in its entirety to a purchasing corporation, which agrees to retain those employees at their same jobs and salaries, but without accrued seniority rights or vacation benefits. The district court granted defendants' motion for summary judgment. Plaintiffs appeal. We affirm.

Plaintiffs are all former employees of Ciba-Geigy Corporation. They worked for the REN Telecommunications Division, which was part of the Applied Plastics Division of Ciba-Geigy. As such, plaintiffs were covered by Ciba-Geigy's Employee Benefit Plan. This ERISA plan provided that Ciba-Geigy employees terminated for reasons other than cause would be entitled to severance pay in the amount of two weeks pay for each year or fraction of a year worked for Ciba-Geigy. Termination for reasons other than cause was defined as termination "initiated by the Company for reasons beyond the control of the employee (*e.g.*, reorganization, budgetary cutback, lack of work, ....)." The Plan defined severance pay as "payments made to an employee when the Company terminates the employer-employee relationship unless the employee has been discharged or special contractual arrangements provide otherwise." As an exception to this general severance pay provision, section 2.9.2. of the Plan provided that "[t]his policy shall not be applicable in any special situation (such as the relocation of a major operating unit) where the Corporate Management Committee deems it necessary to establish a separate policy applicable to that situation only."

The question in this case is whether the facts present such a "special situation." The Applied Plastics Division was reorganized in early 1981. As part of that reorganization, REN Telecommunications Division (REN) was sold in its entirety to Communications Technology Corporation (Communications). In its purchasing contract, Communications specifically disclaimed any liability for claims by any former Ciba-Geigy employees relating to events transpiring prior to sale.

Communications never made plaintiffs a formal offer of employment. When plaintiffs reported to work on July 22, 1981, they discovered they had a new employer. Although Communications retained plaintiffs at their same salaries and job positions, they lost their seniority rights and vacation benefits. Stanley Kase, the Ciba-Geigy executive who interpreted the Plan, testified that he decided that plaintiffs were not entitled to severance pay because no "termination" was involved, and because the Plan specifically exempted "special situations" from its provisions. The sale of REN was seen as a "special situation."

The first issue concerns the standard of review to be given Kase's no severance pay determination. The statute provides for judicial review of benefit determinations under the Employee Retirement Income Security Act (ERISA) using the arbi-

trary and capricious standard. 29 U.S.C.A. §§ 1001 *et seq. See Griffis v. Delta Family-Care Disability,* 723 F.2d 822, 825 (11th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 3514, 82 L.Ed.2d 823 (1984); *Bayles v. Central States, Southeast and Southwest Pension Fund,* 602 F.2d 97, 99 (5th Cir. 1979). Plaintiffs argue that statutory standard does not apply to Kase's decision here for three reasons. First, the Plan document and the summary of the Plan contained in the employee handbook do not identify an administrator of the Plan or specify any procedure for designating an administrator, trustee, or any other fiduciary as required by section 1022. The Plan documents do not state that the termination of an employee who went to work for a purchasing company at the same job and salary constitutes a circumstance which may result in ineligibility, or denial or loss of benefits, as required by section 1022. Second, Kase, who made the decision that plaintiffs were not entitled to severance pay, was not a named fiduciary and did not have authority to act as a fiduciary with respect to the Plan. Third, defendants initially denied that the severance pay Plan was an employee welfare benefit Plan governed by ERISA and, therefore, the decision concerning plaintiffs' entitlement to severance pay was made without any consideration of the fiduciary duties imposed by section 1104 of ERISA.

Whatever the merits of plaintiffs' argument, there is simply no authority for the proposition that procedural errors in an ERISA plan's management requires something other than the arbitrary and capricious standard of review. On the contrary, in a case where ERISA's provisions were "flouted" in a "wholesale and flagrant manner," the arbitrary and capricious standard was still applied, although the court did note that it was not deciding that the arbitrary and capricious standard was the only standard that could be used. *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1352–53 (9th Cir.1984). *See also Dennard v. Richards Group, Inc.,* 681 F.2d 306, 313 (5th Cir.1982), and cases cited therein.

The next issue is whether Kase's decision to deny severance pay benefits was arbitrary and capricious. Kase testified that he made his decision on what are essentially two grounds: first, that plaintiffs were never "terminated," and second, that he considered REN's sale to be a "special situation" under section 2.9.2 of the Plan, justifying the withholding of severance pay.

■ The first reason is probably legally wrong. While it is true that plaintiffs never suffered a termination of actual employment—they were, after all, never unemployed—Ciba-Geigy's Employee Benefit Plan does not define "termination" in that manner. The Plan provided that severance pay would be provided to those employees terminated for reasons "other than cause." A specific example of a reason "other than cause" was listed as corporate "reorganization." The sale of REN was part of a corporate reorganization. Severance pay is defined in the Plan as "payments made to an employee when the Company terminates the employer-employee relationship...." The sale of REN terminated the employer-employee relationship between Ciba-Geigy and plaintiffs. Termination may have been one of "form not substance," but it is clear that the "form" of termination is the controlling factor under Ciba-Geigy's own definition of the word. The Plan never specified a period of unemployment as a condition precedent to receiving severance pay benefits. *Cf. Sly v. P.R. Mallory & Co., Inc.,* 712 F.2d 1209, 1212 (7th Cir.1983). Plaintiffs were "terminated" for severance pay purposes. *See Blau v. Del Monte Corp.,* 748 F.2d 1348, 1354–55 (9th Cir. 1984).

Plaintiffs claim that Kase had no authority to invoke section 2.9.2 because it provides that the Corporate Management Committee is the entity to decide that "it is necessary to establish a separate policy applicable" to a special situation.

The Corporate Management Committee was succeeded by the Executive Committee. According to deposition testimony, the Executive Committee delegated this authority to Dr. Jack Schneller, president of the Plastics and Additives Division, who in turn delegated authority over all personnel

matters connected to the REN sale to Kase.

■ There is no written record of this purported three-tier delegation. At each step the delegation was made orally. Nevertheless, the district court could properly conclude that plaintiffs failed to meet their burden of proof on the contention that this was an improper delegation of authority. Thus, Kase had the properly delegated authority to invoke section 2.9.2. No law has been cited to question the propriety of the oral delegation. The Plan is silent as to how fiduciary responsibility for its implementation should be delegated, and ERISA states only that fiduciary duties themselves may be delegated. 29 U.S.C.A. § 1105(c)(1)(B). Plaintiffs argue that Kase was not a named fiduciary and thus could not possibly act with respect to the Plan. Yet ERISA establishes that even though not a named fiduciary,

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C.A. § 1002(21)(A). *See also Eaves v. Penn,* 587 F.2d 453, 458–59 (10th Cir. 1978); *Fulk v. Bagley,* 88 F.R.D. 153, 161–62 (M.D.N.C.1980); *Freund v. Marshall and Ilsley Bank,* 485 F.Supp. 629, 635 (W.D.Wis.1979). Thus whatever his title, or whether he was named as a fiduciary or not, Kase was acting as a fiduciary when making his no severance pay determination.

■ The final issue is whether Kase's decision to apply section 2.9.2 to plaintiffs in the sale of REN Telecommunications was arbitrary and capricious. Under that highly deferential standard of review, this Court's role "is limited to determining whether [Kase's] interpretation was made rationally and in good faith—not whether it was right." *Griffis v. Delta Family-Care Disability,* 723 F.2d 822, 825 (11th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 3514,

82 L.Ed.2d 823 (1984) (quoting *Riley v. MEBA Pension Trust,* 570 F.2d 406, 410 (2d Cir.1977)).

In *Dennard v. Richards Group, Inc.,* 681 F.2d 306 (5th Cir.1982), the court listed several factors to consider in applying the arbitrary and capricious standard to ERISA claims: "(1) uniformity of construction; (2) 'fair reading' and reasonableness of that reading; and (3) unanticipated costs." *Id.* at 314 (footnote omitted). Further evidence of the good faith of the administrator was said to be found in: "(1) internal consistency of a plan under the interpretation given by the administrators or trustees; (2) any relevant regulations formulated by the appropriate administrative agencies ...; and (3) factual background of the determination by a plan and inferences of lack of good faith, if any." *Id.* While not all these factors can be applied to the instant situation, it is clear that none has been obviously infringed.

The general language of section 2.9.2 leaves it open to a broad discretion in a number of interpretations that would constitute a "fair reading." Plaintiffs did keep their jobs at full pay during difficult economic times. The Plan was consistently interpreted because in every other divestment situation where Ciba-Geigy employees were retained in their old positions by the purchasing entity, no severance pay was given. Nothing in the record indicates Kase acted in anything other than good faith. True, plaintiffs did lose certain benefits and Ciba-Geigy gained in that it did not have to pay out from its ERISA fund, but Kase did nothing that could be characterized as having been done in bad faith. Evenhandedness of treatment is evidence of good faith. *See e.g. Paris v. Wolf, Inc. Profits Sharing Plan,* 637 F.2d 357, 362 (5th Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981).

Furthermore, plaintiffs were on notice that they might not receive severance benefits. Not only was section 2.9.2 in their employee handbooks, but Ciba-Geigy implicitly said that no benefits would be given those employees accepted by the purchaser

when replying to employees' questions regarding the then inchoate sale plans for REN Telecommunications:

1. For those employees *who are not transferable to new owners,* what will be the termination, severance pay policy?

Term. Policy 7.1

—Reasons other than cause

—Notice-Min. 2 wks

—Severance-2 wks/yr. serv.

—Extended medical coverage/severance period.

(emphasis supplied).

The wording of this question and answer suggests that employees who are transferable to a purchaser would not receive severance pay.

The two cases most factually similar to the instant case, *Blau v. Del Monte Corp.,* 748 F.2d 1348 (9th Cir.1984), and *Sly v. P.R. Mallory & Co., Inc.,* 712 F.2d 1209 (7th Cir.1983), came to two different conclusions. *Blau* found arbitrary and capricious behavior on the part of the administrator and *Sly* did not. Both, however, are distinguishable from this controversy because neither involved a "special situation" provision like this Plan.

In sum, plaintiffs have presented no evidence sufficient to establish that Kase's decision to deny severance pay was arbitrary and capricious. Even though plaintiffs have suffered an "injury" through a loss of some benefits, neither ERISA nor the Ciba-Geigy Employee Benefit Plan has been violated.

AFFIRMED.