Jerome G. AUSLOOS, William H. Fulkerson, Debra Poch Griem, Richard Karl Griem, Greg A. Hageman, Arnold H. Heimann, John T. Hemauer, Jerome H. Janty, Elizabeth Ann Karls, Melody Sue Konen, Gerald B. Lorenz, Richard E. Luehrs, Clemens O. Mayer, Jean M. Presto, Wayne J. Roers, Edward P. Staub, James W. Schneider, Donna K. Schwantes, Carol A. Stenz, John P. Stephany, Sharon Judy Thome, Donna Marie Vollmer, John R. Wagie, David Wheeler, and John T. Wilberscheid, Plaintiffs,

v.

CHROMALLOY AMERICAN CORPORATION, Defendant.

Civ. A. No. 84–C–816.

United States District Court, E.D. Wisconsin.

Jan. 17, 1986.

Gordon E. Stillings and Mark W. Morrow, Chilton, Wis., for plaintiffs.

James E. Braza, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is a claim for severance payments by former employees of a manufacturing corporation, which sold the division of its operations in which the claimants were employed. This Court has jurisdiction over the claim by virtue of Section 502(e) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. sec. 1132(e). Presently before the Court are the parties' cross motions for summary judgment. Because no probative facts are disputed and because, as a matter of law, the defendant's denial of severance payments to these employees was not arbitrary and capricious, the defendant's summary judgment motion is granted and the plaintiffs' is denied.

The twenty-five plaintiffs were formerly all employed by the defendant Chromalloy American Corporation ("Chromalloy") at its Arps Division in New Holstein, Wisconsin ("Arps Division"). On Friday, January 21, 1983, each plaintiff was terminated by Chromalloy when it sold its Arps Division to an entity called Arps Manufacturing, Inc. ("Arps, Inc."). Arps, Inc., asked all the plaintiffs to interview on the following day, Saturday, at which time Arps, Inc., offered the plaintiffs the jobs they had held with Chromalloy but for somewhat reduced compensation. The plaintiffs all accepted this offer and were immediately employed with Arps, Inc., effective Monday, January 24, 1983.

The "Asset Purchase Agreement," which set the terms of Chromalloy's sale of its Arps Division to Arps, Inc., does not contain a provision requiring Arps, Inc., to rehire the plaintiffs. However, during the course of sale negotiations Arps, Inc., representatives, Marvin B. Lorig and Donald N. Brown, assured Chromalloy's representatives, James A. Silkwood and John J. Dowling, III, that Arps Division employees would in fact be rehired.

Chromalloy's policy with respect to the payment of severance money is governed by a document entitled "Separation Guidelines" ("Guidelines"). This document was drafted by Andrew A. Kole, President of Chromalloy's Farm and Industrial Equipment Company, for all the farm and industrial equipment divisions. The Guidelines went into effect on January 1, 1982, and were added to the Arps Division corporate procedures manual on February 10, 1982. The written Guidelines had not been modified in any relevant respect by January 21, 1983, when the plaintiffs were terminated. The portions of the Guidelines relevant to this litigation are as follows:

II. Severance Pay

A. Separation Without Cause (Exempt Only)

Employees who are separated by the company without cause are eligible to receive pay as severance. Employees laid off (not to exceed 90 days) are not eligible for severance pay. Payment is based on the length of service of the employee. Employees with six (6) months service up to two (2) years will receive two (2) weeks severance pay. All other covered employees will receive one (1) weeks pay for each year of service up to a maximum of twenty-six (26) weeks.

B. Separation Without Cause (Non-exempt Only)

Employees who are separated by the company without cause are eligible to receive pay as severance. Employees laid off (not to exceed ninety (90) days) are not eligible for severance pay. Payment is based on the length of service of the employee. Payments will be made under the following schedule:

| | |
|---|---|
| 6 months thru 2 years | — 2 weeks pay |
| 2 years thru 5 years | — 3 weeks pay |
| 5 years thru 10 years | — 4 weeks pay |
| 10 years thru 15 years | — 6 weeks pay |
| 15 years or more | — 8 weeks pay |

Payment will be made on the company's established pay period.

C. Separation With Cause

Employees separated for cause are not eligible for severance pay.

.    .    .    .    .

III. Insurance & Other Fringe Benefits

A. Separation With/Without Cause

Employees who voluntarily separate from the company, at their request, are not eligible for insurance or other benefits beyond their last day worked. Employees separating at the request of the company will be eligible for insurance benefits during the period in which the company pays severance pay under the schedule defined in Section II, A and B. This includes coverage for eligible dependents. Those benefits which have a conversion privilege will be honored if all provisions of the conversion are fulfilled. The conversion privilege for those individuals receiving severance pay under the policy commences on the day following the last day of severance pay.

B. Laid Off Employees

Employees on layoff will be eligible for health and life coverage for a maximum of ninety (90) days after the last day worked. This includes coverage for eligible dependents. All other fringe benefits cease on the last day worked.

IV. Notice of Change

The company, at its option, may change, delete, modify, or rescind any part or parts of this policy at any time without prior notice. Employees may not accrue eligibility for benefits beyond the last day worked. All provisions of the policy are guidelines and are completely discretionary by the company.

The plaintiffs had access to the Guidelines, which were kept in the corporate procedures manual in the office of plaintiff Wayne Roers, the Plant Manager. The plaintiffs all knew prior to January 21, 1983, that Chromalloy had a severance pay plan. All the plaintiffs except one also knew prior to that date that defendant was preparing to sell its Arps Division.

Prior to the sale of its Arps Division, Chromalloy had sold several other of its farm and industrial equipment divisions. In no case did Chromalloy make severance payments to an employee terminated as a result of such sale if the employee was offered a position with the division's purchaser. Chromalloy did make severance payments, however, to employees who were terminated as a result of a division sale and who were not offered employment by the purchaser. Consistent with its past practices, Chromalloy made no severance payments to the plaintiffs.

I.

The parties agree that the defendant's severance pay plan was an "employee welfare benefit plan" within the meaning of ERISA, and that the appropriate standard of this Court's review of the defendant's administration of that plan, pursuant to 29 U.S.C. sec. 1104, looks to whether the administrator's action was "arbitrary and capricious."

Besides specific ERISA provisions this Court must look to the developing body of federal common law concerning the specific issues raised in this case. For "Congress intended for the courts, borrowing from state law where appropriate, and guided by the policies expressed in ERISA and other

federal labor laws, to fashion a body of federal common law to govern ERISA suits." *Scott v. Gulf Oil Corporation*, 754 F.2d 1499, 1502 (9th Cir.1985); *see also Holland v. Burlington Industries, Inc.*, 772 F.2d 1140, at III. (4th Cir.1985).

The plaintiffs make essentially two arguments that Chromalloy arbitrarily and capriciously administered the severance pay provision of their employee benefit plan. They first argue that the defendant's failure to specify in the written Guidelines that employees terminated in the course of the sale of a division of the company, who were rehired by the purchaser, would not receive severance payments violated ERISA's requirement that employee benefit plans be in writing (29 U.S.C. sec. 1022). Second, they argue that the defendant arbitrarily and capriciously interpreted the Guidelines, as written, to deny severance payments to the plaintiffs. Both the plaintiffs' arguments are refuted by what must now be regarded as settled federal law on the non-payment of severance money to employees in the plaintiffs' situation pursuant to ERISA-regulated employee benefit plans. *See Sly v. P.R. Mallory & Company, Inc.*, 712 F.2d 1209 (7th Cir.1983); *Anderson v. Ciba-Geigy Corporation*, 759 F.2d 1518, 1519 (11th Cir.1985); *Jung v. FMC Corporation*, 755 F.2d 708, 711 (9th Cir.1985); *Holland v. Burlington Industries, Inc.*, 772 F.2d 1140 (4th Cir.1985).

In determining whether the defendant acted arbitrarily and capriciously, the Court may not substitute its judgment for that of the defendant. *Smith v. CMTA–IAM Pension Trust*, 654 F.2d 650, 655 (9th Cir.1981). Nor may the Court choose between several reasonable interpretations of the plan, *Tomlin v. Board of Trustees*, 586 F.2d 148, 151 (9th Cir.1978), or to determine whether the defendant drafted the best possible eligibility requirements. *Vaughan v. Metal Lathers Local 46 Pension Fund*, 474 F.Supp. 613, 617 (S.D.N.Y. 1979). The Court is required only to determine whether the defendant acted reasonably and rationally. *Gordon v. ILWU–PMA Benefit Funds*, 616 F.2d 433, 439 (9th Cir.1980).

## II.

The plaintiffs' first argument is that defendant arbitrarily and capriciously failed to describe the severance pay policy in written detail sufficient to forewarn these plaintiffs that they would not be receiving severance pay. This argument has been rejected, however, by the United States Court of Appeals for the Eleventh Circuit in a case directly on point. The failure to specify in writing that retention by employees of their jobs following the sale of a corporate subdivision fell into a "special situation" exception to the severance pay provision of an ERISA-regulated employee benefit plan is not arbitrary and capricious where the provision was amenable to such an interpretation and had been consistently applied in similar fashion in other divestment situations, and there was no showing that the administrator had acted in bad faith. *Anderson v. Ciba-Geigy Corporation*, 759 F.2d at 1521. As indicated below, Chromalloy's Guidelines were amenable to the interpretation put on them by the company, and that interpretation was consistently applied in similar situations. The plaintiffs have not alleged nor does the evidence show bad faith by the defendant.

It is, of course, true that the facts in this case vary to some degree from those in *Anderson*. The Guidelines in this case afford the company broad discretion regarding severance payments, whereas the plan in *Anderson* contained a provision for determination by the company of "special exceptions" to severance pay eligibility. Here, there is some reduction in the compensation the plaintiffs will receive as employees of Arps, Inc., whereas in *Anderson* plaintiffs lost seniority rights and vacation benefits. But these factual variations are not sufficient to distinguish the two cases. Whatever procedural error the defendant committed by failing carefully to specify the situations in which no severance payments would be made, such error does not render the defendant's administration of its

severance pay plan "arbitrary and capricious."

## III.

■ Plaintiffs' second theory is that Chromalloy arbitrarily and capriciously interpreted its Guidelines to exclude from severance pay eligibility employees retained by the purchaser of a former Chromalloy division. This argument fares no better than the first in light of unanimous federal precedent. The crucial term to be interpreted in these Guidelines is "severance pay." In another case directly on point the United States Court of Appeals for the Seventh Circuit defines "severance pay" as remuneration paid to a terminated employee to cushion the financial blow that necessarily accompanies a period of unemployment following termination. *Sly v. P.R. Mallory & Company, Inc.*, 712 F.2d at 1211; *see also Jung v. FMC Corporation*, 755 F.2d at 713. The defendant's practice, when it sold a division, of paying no severance money to employees who were immediately rehired by the new owners in the same jobs, for similar compensation, and who therefore suffered no financial blow due to unemployment, was reasonable. Therefore, the defendant's interpretation of its Guidelines, in light of the widespread understanding of the purpose of severance pay, was not arbitrary and capricious.

■ Consistency in the application of a challenged interpretation of a severance pay plan is evidence of the rationality of that interpretation. *See Sly v. P.R. Mallory & Co., Inc.*, 712 F.2d at 1213; *Anderson v. Ciba-Geigy Corporation*, 759 F.2d at 1522; *Jung v. FMC Corporation*, 755 F.2d at 713. Here, it is uncontroverted that during the course of selling off its farm and industrial equipment divisions, the defendant both consistently made severance payments to terminated employees who were not rehired and consistently denied such payments to terminated employees who were rehired by the division's purchaser. Far from being arbitrary, defendant's interpretation of the Guidelines has been consistent with the purpose of severance payments.

Nothing in the written Guidelines promulgated by the defendant indicates that the purpose of severance pay within the defendant's package of employee benefits was anything other than unemployment compensation. While it is true that severance payments were to vary in size according to the length of the terminated employee's service with the defendant, this does not indicate that severance payments were a form of deferred compensation. Such a variation is as likely to have been designed to compensate for the increased reliance by and possibly decreased employment prospects for senior employees. Moreover, it would be odd to provide health insurance benefits to all former employees receiving severance payments, as the Guidelines specify, were such employees to include persons, like the plaintiffs in this case, who were already re-employed and covered by their new employer's health insurance plan. The co-extensive coverage of severance pay and health insurance benefits suggests that both provisions were meant financially to cushion terminated employees during a period of unemployment. *See Pabst Brewing Co. v. Anger*, 610 F.Supp. 214, 217 (D.C.Minn.1985).

The plaintiffs' argument that their "fortuitous" rehiring by Arps, Inc., is legally irrelevant to the question whether the defendant acted arbitrarily in refusing to make severance payments to them is untenable. The defendant's action must be evaluated in light of what they knew or had reason to believe would become of their former employees. Evidence that the defendant's officers had received verbal assurance from the officers of Arps, Inc., that all the defendant's employees would be retained after the acquisition is relevant to the question whether the defendant's refusal to make severance payments was reasonable or capricious. The fact that plaintiffs were all rehired without missing a single day of employment is evidence that defendant's reliance on the purchaser's oral assurances was reasonable.

### ORDER

The defendant is entitled to judgment as a matter of well-established federal common law.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied.