## In re WHITE MOTOR CORPORATION, Debtor.

Wilbert C. LYNN, Plaintiff,

v.

John T. GRIGSBY, Jr., et al., Defendants.

Bankruptcy No. B80–03361.
Adv. No. B87–0082.

United States Bankruptcy Court,
N.D. Ohio, E.D.

May 19, 1989.

Jeffrey M. Embleton, Anthony J. Coyne, Mansour, Gavin, Gerlack & Manos Co., LPA, Cleveland, Ohio, for Wilbert C. Lynn.

David Weiner, Lawrence Oscar, Michael Garvin, Hahn, Loeser & Parks, Cleveland, Ohio, for John T. Grigsby, Jr.

Claude D. Montgomery, Robin S. Weinstein, Myerson & Kuhn, New York City, for Adam T. Kendzierski, Wilfred J. Quigley, Jane Scheel, David Hirschland & Wells Fargo Bank, N.A.

## MEMORANDUM OF OPINION AND DECISION

WILLIAM J. O'NEILL, Bankruptcy Judge.

This matter is before the Court on the Second Amended Complaint of Wilbert C. Lynn requesting determination of his en-

titlement to participate in the Voluntary Benefits Program (VBP) funded as part of the White Motor Corporation plan of reorganization and related relief. Defendants, John T. Grigsby, Jr., Adam T. Kendzierski, Wilfred J. Quigley, Jane E. Scheel, David Hirschland and Wells Fargo Bank filed an answer. The Court has jurisdiction of this core proceeding pursuant to Section 157(b)(2)(O) of Title 28 of the United States Code and Article VIII, Section 8.1 of the White Motor Corporation Second Modified Plan of Reorganization. Plaintiff's motion for summary judgment and Defendants' motion to dismiss were previously denied by order of May 3, 1988. Pursuant to a January 6, 1989 order of bifurcation, trial proceeded on the issue of liability. The parties stipulated to the following:—

"1. Plaintiff, Wilbert C. Lynn, is a resident of Solon, Ohio, and is 64 years of age.

2. Defendants, John T. Grigsby, Jr., Adam T. (Terry) Kendzierski, Wilfred J. (Bill) Quigley, Jane E. Scheel, and David Hirschland, were at all times relevant herein and remain members of the Benefits Committee of the Voluntary Benefits Plan of the Second Modified Plan of Reorganization of the White Motor Corporation, as amended.

3. Wells Fargo Bank, N.A., successor to Crocker National Bank is the Trustee of the Voluntary Benefits Plan of the White Motor Corporation Reorganization Trust.

4. Joint Exhibit A, attached hereto, is the Trust Agreement entered into between the White Motor Corporation and Crocker National Bank establishing a trust pursuant to the Voluntary Benefits Plan to provide health care and survivor benefits for employees of White Motor Corporation who retired prior to November 21, 1981, or were eligible to retire on such date and who elected to participate in and meet the requirements of the Voluntary Benefits Plan.

5. Joint Exhibit B is the Voluntary Benefits Plan referred to in the Trust Agreement, Joint Exhibit A, between White Motor Corporation and Crocker National Bank.

6. Plaintiff, Wilbert C. Lynn, began his employment with the White Motor Corporation on August 21, 1950, and remained continuously employed without interruption until he was laid off on September 30, 1978, and received regular salary until the date he was laid off.

7. White Motor Corporation then determined to layoff the Plaintiff effective as of September 30, 1978, and the conditions of the Plaintiff's layoff were as follows:

Employee to be offered Mutual/Satisfactory Company Option Retirement. Starting August 16, 1978, Lynn will take five (5) weeks 78–79 vacation, five and one-half (5½) days accrued 79–80 vacation, and two and one-half (2½) unused personal days; layoff effective 9/30/78; pay five and one-half (5½) months severance pay; retirement effective 4/1/79. If not acceptable to employee, he will be laid off 9/30/78, paid eleven (11) months severance pay, and he may elect early retirement at that time if he desires.

A copy of the Amended Personnel Status Change is attached hereto as Joint Exhibit C.

8. In accordance with White Motor Corporation's decision to layoff Plaintiff, Plaintiff was laid off effective September 30, 1978. The Plaintiff was first indicated of this in Mr. Finley's letter of October 6, 1978. (See Joint Exhibit D.)

9. At the time of Plaintiff's layoff on September 30, 1978, White Motor Corporation had in effect a separation procedure, Number M–6–4–3, attached hereto as Joint Exhibit E and a layoff procedure, Number M–6–4–8, attached hereto as Joint Exhibit F, both effective beginning November 1, 1975, and in effect on the date of Plaintiff's layoff.

10. At the time of Plaintiff's layoff, White Motor Corporation had in effect a Pension Plan for salaried employees, effective December 1, 1974, which provided, in part, under Section 1.23 of the Plan:

"Early Retirement Date" means the first day of a month in the case of (a), (b), or (c) below, in a written request for early retirement filed with the COMMITTEE no less than Sixty (60) days before said first day of the month by a PARTICI-

PANT or in the case of (d) below, selected by the EMPLOYER, immediately following the month with respect to which a PARTICIPANT has:

(a) Attained age sixty (60) but not age sixty-five (65), and who has ten (10) or more but less than thirty (30) YEARS OF CREDITED SERVICE;

(b) Attained age fifty-five (55) but not age sixty (60), and whose combined years of age and YEARS OF CREDITED SERVICE totals eighty-five (85) or more;

(c) Thirty (30) or more YEARS OF CREDITED SERVICE; or

(d) Attained age fifty-five (55) but not age sixty-five (65), and who has ten (10) or more YEARS OF CREDITED SERVICE and provided further that it shall also mean such first day in the case of a MEMBER who in his capacity as a PARTICIPANT meets the requirement of (a), (b), (c), or (d), above.

11. At the time of Plaintiff's layoff, he had accumulated twenty-eight (28) years and one (1) month of service and was fifty-five (55) years and four (4) months of age and, thus, was not eligible for early retirement at his option in accordance with the language set forth in Paragraph 1.23 of the Pension Plan, but was eligible under Company Option.

12. On or before August 1, 1979, Plaintiff's combined years of age, fifty-six (56) years and two (2) months, and his years of credited service, twenty-eight (28) years and eleven (11) months, total eighty-six (86) years, and, thus, he became eligible for early retirement at his option under Paragraph 1.23(b) of the Pension Plan.

13. On or before August 29, 1979, Plaintiff's legal counsel sent a letter to Attorney Barnard, legal counsel for the White Motor Corporation. The White Motor Corporation, through its legal representative, responded to Plaintiff's counsel in a letter dated September 25, 1979. (See Joint Exhibits G and H.)

14. On or about September 9, 1985, Plaintiff made application for participation under the Voluntary Benefits Plan by letter to Jan Bair, the Benefits Administrator of White Motor Corporation Reorganization Trust, a copy of said letter is attached hereto as Joint Exhibit I.

15. On September 4, 1980, White Motor Corporation and several affiliated corporations filed petitions for reorganization under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Northern District of Ohio ("Bankruptcy Court").

16. On November 18, 1983, the Bankruptcy Court entered an order confirming the Second Modified Plan of Reorganization for White Motor Corporation. As part of that plan of reorganization, White Motor Corporation funded a Voluntary Benefits Plan.

17. On October 1, 1985, Bair advised Lynn that his name did not appear on the list of eligible Voluntary Benefits Plan participants filed in the Bankruptcy Court on December 9, 1982. (Joint Exhibit J.)

18. On October 7, 1985, Lynn wrote to Grigsby disagreeing that he was not eligible to retire as of November 21, 1981, under the Voluntary Benefits Plan and inquired as to the appropriate method of appealing his decision. (Joint Exhibit K.)

19. On October 30, 1985, Grigsby wrote to Lynn and concluded that the information on the attached correspondence (See Joint Exhibit L, Richards' January 21, 1982 letter stating Plaintiff was deferred vested) was accurate, and that he agreed Plaintiff was not eligible to participate in the Plan. (October 30, 1985 letter from Grigsby attached as Joint Exhibit M and January 21, 1982 letter from Richard attached as Joint Exhibit L). He also reported that Mr. Montgomery was the appropriate person to appeal to.

20. On November 5, 1985, Lynn wrote to Claude D. Montgomery appealing the coverage issue. (Joint Exhibit N)

21. By letter dated December 4, 1985 and postmarked March 19, 1986, Mr. Montgomery responded to Plaintiff's Appeal dated November 5, 1985. In this letter, Mr. Montgomery said the principal issue would be Plaintiff's retirement eligibility status, and stated that documents which the Plaintiff might have from P.B.G.C. con-

cerning such eligibility would aid their deliberation and be helpful. Plaintiff was advised that his appeal would be reviewed at the next regular meeting in New York on May 15, 1986. (See Joint Exhibit O)

22. On or about May 29, 1986, Mr. Montgomery, counsel to the Voluntary Benefits Plan for Retired Employees of White Motor Corporation, sent a letter to Plaintiff, a copy of which is attached hereto as Joint Exhibit P.

23. On or about August 14, 1986, Defendant, John Grigsby, sent a letter to Plaintiff, a copy of which is attached hereto as Joint Exhibit Q.

24. The foregoing shall be treated as proven without the need of further evidence or testimony but solely for the purposes of the captioned proceedings."

Upon consideration of the exhibits and transcript of trial, counsels' briefs and the case file, the Court further finds:—

The Voluntary Benefits Plan (VBP) was created as a mechanism to deal with claims for health care survivor benefits in the White Motor Corporation reorganization. (TR. 83, 137). The plan was established to qualify under ERISA and Section 501 of the Internal Revenue Code. (Joint Exh. B). The VBP was developed through extensive negotiations between the Debtor and various creditor constituencies in the latter half of 1982. (TR. 131–139). Participants in the negotiations were insistent that claimant/beneficiaries under the VBP be conclusively defined. Consequently, an eligibility list was constructed to limit participation. (TR. 137–139, 144). The VBP became effective January 1, 1983 and was funded on an interim basis until final funding was obtained as part of White Motor's confirmed plan of reorganization on November 18, 1983. Under the confirmed plan, Class 6 consisted of claims for Health Care/Survivor Benefits "which presently retired employees and employees eligible for retirement ... are legally entitled to receive from the Debtor." *Second Amended Plan of Reorganization, Article I, Article II, Section 2.6.* Class 6 claims were satisfied by allowance of a 60 million dollar claim to the retiree trust which funds the VBP, with certain offsets for previous interim payments. Payment was in full settlement, release and discharge of Debtor's liability for health care benefit claims. *Second Amended Plan of Reorganization, Article III, Section 3.6.* All actuarial calculations used in negotiations regarding Class 6 and the funding for the VBP, which resulted in allowance of the 60 million dollar claim, were based on the exclusive eligibility list. (TR. 141–143).

Eligibility for the VBP was established by using November 21, 1981 as the relevant date for considering existence of claims for health care, the choice of this date being somewhat arbitrary. (TR. 138). As constructed, the eligibility list was intended to encompass individuals eligible for health care benefits on that date who were either retirees or employees eligible to retire. (TR. 83, 139, 159, 245–47, 272–73). Individuals with a vested right to a pension but ineligible to retire on that date (deferred vesteds), were excluded from eligibility. (TR. 144–45). The eligibility list was compiled prior to December 10, 1982, the date Debtor filed its initial application for authority to provide health care benefits on an interim basis. The list was not filed with the Court, however, until August 24, 1983; it was appended to Debtor's application seeking determination of plan of reorganization voting procedure for Class 6 claims.

Article II, Section 2.1 of the VBP defines eligibility to participate as follows:

"All Employees, and their surviving spouses and Dependents entitled on November 21, 1981 to receive medical/insurance benefits under the various benefits plans of WMC, shall be eligible to participate in the Plan with respect to Health Care Benefits." (Joint Exh. B)

Entitlement to health benefits is requisite to VBP eligibility for employees, surviving spouses and dependents notwithstanding Plaintiff's arguments of incorrect sentence organization. (TR. 83, 139, 159, 245–47, 272–73). "Employee" is defined under Article I, Section 1.7 as follows:

" 'Employee' shall mean an employee of WMC who retired prior to November 21,

1981 or was eligible to retire on such date including both salaried and hourly employees, whether or not included in the bargaining unit represented by the union, of the Company, all Employees being designated as such on a list filed with WMC's application dated December 9, 1982 to the Court in Case No. B80–3361." (Joint Exh. B)

The list referred to in this section is the eligibility list compiled in 1982. Eligibility to participate under the VBP was intended to be limited to and inclusive of the eligibility list. (TR. 83–85, 144, 163).

Lynn's name is not on the eligibility list. Moreover, the omission does not appear to be in error. He was laid-off from White Motor on September 30, 1978. (Stip. 8). His entitlement to health care benefits ceased August of 1979 when his severance pay expired. (TR. 236–37). He became eligible for early retirement at his option on August 1, 1979, but did not exercise that option until after November 21, 1981. (Stip. 12). No evidence supports his argument that he retired prior to November 21, 1981. Lynn, therefore, was neither a retiree nor entitled to health benefits on November 21, 1981, and did not satisfy the criteria for list inclusion. Persuasive testimony also reflected Lynn's employment with White Motor terminated on September 30, 1980 pursuant to a revised separation's policy limiting an employee's layoff to two years. (Def.Exh. 4, TR. 280–291). Therefore, it is apparent Lynn was not an "employee" eligible to retire on November 21, 1981 but rather an ex-employee eligible to retire on that date.

Lynn was excluded from participation in the VBP. It is clear, however, he was apprised of the existence and character of the VBP by virtue of his being a claimant in the White Motor reorganization. Claimants received notice of the Disclosure Statement and Second Amended Plan of Reorganization which explicitly detail the VBP and Class 6 claims. Pursuant to Lynn's filing a proof of claim, notice was sent to the office of his legal counsel. (Def.Exh. 11, TR. 145–47). Nothing in the record refutes transmittal or receipt of such notice.

The Benefits Committee which denied Lynn's participation has been responsible for administering the VBP since confirmation of White's plan of reorganization. (Stip. 2). John T. Grigsby, Jr., Chairman thereof, was White's chief financial officer during reorganization and actively participated in VBP negotiations including its eligibility and funding. (TR. 131–145). Pursuant to the VBP, the Benefits Committee is plan administrator under ERISA, Employee Retirement Income Security Act. (*VBP Article I, Section 1.3, Joint Exh. B*). The Committee meets biannually. (TR. 255). They delegated no duty to review applications to participate, since applications like Lynn's were unanticipated. (TR. 261). In fact, Lynn's is the only application to date. (TR. 123, 255–56).

The Committee's administration of the VBP is outlined in Article VII which provides, inter alia,

"The Committee shall administer the Plan in accordance with its terms and in the best interests of the Participants ... the Committee shall determine questions arising in the administration, interpretation and operation of the Plan ... Any determination by or on behalf of the Committee shall be conclusive and binding upon all Employees, Participants, Eligible Survivors, and all other persons interested in the Plan or asserting claims under the Plan, all of whom shall be treated in a uniform and non-discriminatory manner." Joint Exh. B, VBP, Article VII, Section 7.1.2

This section grants the Committee discretionary authority to interpret the plan including eligibility determinations. Further support for this authority is Article VIII, Section 8.5(d) which provides that committee determinations on claims for benefits are binding unless arbitrary and capricious. (Joint Exh. B).

Lynn originally applied for participation in the VBP on September 9, 1985. The application was precipitated by termination of employment from another company and his search for alternative health care protection. (Joint Exh. I, TR. 34–35). Jan

Bair, benefits administrator of the White Motor reorganization trust, advised Lynn his VBP ineligibility was predicated on the exclusive list. She further advised a reason for exclusion was his ineligibility to retire November 21, 1981 because he was a deferred vested participant. (Joint Exh. J). Lynn subsequently engaged in protracted communications with the Benefits Committee. Ultimately, he was denied participation in the VBP.

Lynn originally contacted the committee by letter to Grigsby who learned from company records and former White Motor employee relations and benefits administration personnel of Lynn's status as a deferred vested participant. For this reason, Grigsby informed Lynn he was denied VBP eligibility. (Joint Exhibits M and L, TR. 88). He referred Lynn to the committee's legal counsel to appeal the decision, which Lynn did on November 5, 1985. (Joint Exhibit N). Receiving no response, Lynn again wrote counsel on March 7, 1986, requesting consideration of his appeal. (Plaintiff's Exh. B, TR. 53–54). By letter of December 4, 1985, mailed March 19, 1986, counsel informed Lynn the full committee would consider his appeal in May, the issue on appeal being Lynn's eligibility to retire. (Joint Ex. O). No reason or explanation was offered for counsel's delay in responding.

On May 13, 1986, the full committee met and denied Lynn's appeal due to his ineligibility to retire on November 21, 1981. (Plaintiff's Exh. 2). This decision was predicated on information from former White employees knowledgeable on the issue of Lynn's retirement status. (TR. 101–103). The decision was rendered despite Lynn's assertions of his eligibility to retire on that date. (Plaintiff's Exh. B, C, Joint Exh. K, N). Committee counsel's letter informing Plaintiff of the appeal decision indicated Lynn's status as a deferred vested employee and concomitant ineligibility for medical benefits resulted in his ineligibility for the VBP. (Joint Exh. P).

The Benefits Committee's second consideration of Lynn's eligibility was effected by a flurry of letters to various committee representatives in which Lynn maintained his eligibility to retire on the pertinent date. (Plaintiff's Exh. D, E, F, H, J, K, N, TR. 59–74). At some point, this correspondence impressed Grigsby with the possibility that Lynn's status as a deferred vested participant, ineligible to retire, was incorrectly represented to him. (TR. 114–116). Grigsby then conducted an investigation from which he learned Lynn was eligible to retire on November 21, 1981, but failed to exercise his option. Further, he learned Lynn's employee status with White terminated pursuant to company policy on September 30, 1980. (TR. 115–118). In August of 1986, Grigsby telephoned Lynn and discussed the situation. (TR. 75–77). His August 14, 1986 letter to Lynn confirms this conversation (Joint Exh. Q), and specifically rejects the committee's prior determination premised on retirement status. Equally explicit is the letter's definition of eligibility standards based on the exclusive list and on Lynn's employee termination in accordance with company policy. Because of these new facts, reconsideration of the committee's decision was assured. A September 3, 1986 letter to Lynn clearly reflects that, given his unique situation, the issue to be considered was whether to make an exception in Lynn's eligibility requirements. (Plaintiff's Exh. R).

At the Benefits Committee meeting on November 6, 1986, Grigsby led the discussion of Lynn's reconsideration. They voted to deny Lynn VBP participation based on the exclusive list. Further, they determined he was not inadvertently omitted from the list, and there would be no exception in eligibility requirements. (Plaintiff's Exh. AA, TR. 122–128). On November 15, 1986, Lynn wrote Grigsby requesting a decision. (Plaintiff's Exh. X, TR. 202). The Committee never informed him his appeal on reconsideration was denied. (TR. 129, 203). Lynn commenced this adversary proceeding on March 11, 1987.

## CONCLUSIONS OF LAW

### STANDARD OF REVIEW

■ Plaintiff brings this action under Section 1132(a)(3) of Title 29 seeking deter-

mination of the propriety of Committee's decision denying him participation in the VBP. Ancillary procedural issues are also raised. The parties dispute the applicable standard of review. The Supreme Court, in *Firestone Tire and Rubber Co. v. Bruch*, — U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), recently determined applicable trust principles require de novo review of an administrator's decision denying plan participation under Section 1132(a)(1)(B) of Title 29, except when the administrator has discretion to determine eligibility or to construe terms of the plan. This decision reversed case law applying a more deferential standard of review under which the administrator's decision was reviewed to determine if it was arbitrary or capricious. The deferential standard continues to be appropriate in reviewing decisions within an administrator's discretionary authority. Lynn argues for de novo review. Alternatively, he argues the decision be reversed under the deferential standard. The *Bruch* case controls the within action even though it involves review of a different subsection of 1132(a). De novo review, however, is inappropriate under the trust principles established in *Bruch* because the Committee exercised discretion in determining Lynn's ineligibility. Case law delineating the deferential standard, though limited by the *Bruch* decision, is relevant and applicable to a review of this discretionary determination.

Since the VBP was established pursuant to ERISA, it is governed by 29 U.S.C. § 1001 et seq. The Committee is plan administrator, and is presumed to be knowledgeable in details of the plan, its purpose and operation. Review of Committee's decision is limited to determining if there was an abuse of discretion. The decision is reviewed to determine whether it was arbitrary, capricious, in bad faith, erroneous as a matter of law or unsupported by substantial evidence. *Adcock v. Firestone Tire and Rubber Co.*, 822 F.2d 623 (6th Cir. 1987); *Blakeman v. Mead Containers*, 779 F.2d 1146 (6th Cir.1985); *Moore v. Reynolds Metals Co. Retirement Program*, 740 F.2d 454 (6th Cir.1984), cert. denied, 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780

(1985). The decision must be the result of a deliberate, principled, reasoning process. *Varhola v. Doe*, 820 F.2d 809 (6th Cir. 1987). Review does not require evaluation of the merits of the parties' plan interpretations. *Varhola*. The legally correct interpretation may, however, be considered as one factor relevant to reviewing the decision. *Dennard v. Richards Group, Inc.*, 681 F.2d 306 (5th Cir.1982).

This standard of review "defies generalized application and must be contextually tailored". *Maggard v. O'Connell*, 671 F.2d 568, 571 (D.C.Cir.1982). Consideration of a wide variety of factors is appropriate. Frequently considered are: (1) uniformity of construction; (2) fair reading or reasonableness of the reading; (3) unanticipated costs; and (4) factual background of the determination. *Anderson v. Ciba–Geigy Corp.*, 759 F.2d 1518 (11th Cir.1985), cert. denied, 474 U.S. 995, 106 S.Ct. 410, 88 L.Ed.2d 360 (1985); *Dennard v. Richards Group, Inc.*, 681 F.2d 306 (5th Cir.1982); *De Angelis v. Warner Lambert Co.*, 641 F.Supp. 467 (S.D.N.Y.1986).

■ Procedural defects in an administrator's claims process are probative of arbitrary and capricious decision-making and may provide inference of bad faith. *Anderson v. Ciba–Geigy Corp.* Violations of ERISA procedural requirements do not ordinarily demand a substantive remedy. *Ellenberg v. Brockway, Inc.*, 763 F.2d 1091 (9th Cir.1985); *Wolfe v. J.C. Penney Co.*, 710 F.2d 388 (7th Cir.1983). Significant procedural violations may be deemed errors on a question of law requiring remand to the administrator for reconsideration. *Wolfe; Grossmuller v. International Union, U.A.W.*, 511 F.Supp. 709 (E.D.Pa. 1981). At the point procedural violations effect a substantive harm, substantive remedies are appropriate. *Blau v. Del Monte*, 748 F.2d 1348 (9th Cir.1984). In addition, procedural violations may invoke imposition of statutory penalties, an issue subsequently discussed.

■ The Committee's decision is alleged to be arbitrary, capricious and in bad faith. Cited to support decision reversal are the

Committee's incorrect plan interpretation, its procedural errors and its varying reasons for ineligibility. It is argued that Plaintiff was given no less than four different reasons for ineligibility.

Unquestionably, the Committee's initial decision on review denying VBP eligibility was predicated on inaccurate information of Lynn's retirement status and was incorrect. The decision was based on his misrepresented status as a deferred vested pension plan participant, and, therefore, ineligible to retire on November 21, 1981. The decision was reasonably founded upon information provided by knowledgeable, reliable, former White Motor employees, in spite of Lynn's vehement assertions of his retirement eligibility. Additionally, it was indicated such retirees were ineligible to receive health care benefits on the relevant date. These eligibility requirements are imposed by a fair reading of the VBP provisions and underlying purpose. There is no evidence the decision was in bad faith. Although Committee minutes reflect discussion of Plaintiff's employment and pending litigation with White Motor, there is no indication these peripheral considerations impacted on the Committee's ultimate decision.

The Committee's decision was not free of procedural deficiencies. Pursuant to 29 C.F.R. 2560-503(g) and (h), a claimant is apprised of the review procedure and should receive a decision on review not later than 120 days after request for review. Clearly, the Committee had no established review procedure and their counsel was unreasonably dilatory in informing Plaintiff the manner in which his claim would be reviewed. Moreover, Plaintiff requested review in November of 1985, but received no decision until May 29, 1986. These procedural deficiencies, though discourteous and inconsiderate, produced no substantive harm. Further, the Committee's act of reconsidering its decision effectively remedied the situation.

Under relevant criteria, the Committee's initial decision was not arbitrary or capricious. The asseveration that Plaintiff was told varying reasons for ineligibility is mis-leading. He clearly was provided a different reason for ineligibility after the Committee reconsidered his claim. The basis for this change is discussed subsequently and is conclusive in this matter. With respect to its first decision, the Committee was consistent. Lynn was denied eligibility due to his misrepresented status as a deferred vested pension plan participant, an individual ineligible to retire on November 21, 1981. If one is deferred vested, he is currently ineligible to retire. There is no inconsistency. Also, indicating such individual was ineligible for health care benefits was merely further explanation of his ineligibility, not a different reason.

The Committee's reconsideration of eligibility also resulted in VBP denial. The decision was premised on exclusivity of the eligibility list and supported by Plaintiff's status as a former White Motor employee on November 21, 1981. The Committee Chairman conducted his independent investigation which he presented for review. Grigsby expressed sympathy for Plaintiff's plight, but under relevant criteria, the Committee's decision is not reversible.

Limiting eligibility to the list is a fair and reasonable reading of the VBP provisions. Section 1.7 clearly indicates the list is controlling. Also, reliance on Lynn's status as an ex-employee to support denying eligibility was soundly premised on the terms of Sections 2.1 and 1.7 which circumscribe eligibility predicated on an individual's status as an employee. The Committee's plan interpretation is supported by the history and purposes underlying formulation of the VBP and is, in fact, legally correct. Funding for the VBP was based on a defined universe of participants. Plaintiff's inclusion would have imposed unanticipated costs. Moreover, the uniqueness of his situation supported the Committee's exclusive reading of the plan participation requirements.

The Committee's procedural administration also failed to comply with certain ERISA standards. They did not notify Plaintiff of the decision on reconsideration as required by Section 1133 of Title 29. While not insignificant, this omission pro-

duced no substantial harm. Review of the facts surrounding the Committee's decision clearly reflects it was rendered in good faith and not arbitrary or capricious.

De novo review of the Committee's decision yields a similar result. The VBP represents a compromise of claims for health care benefits in the White Motor reorganization. It results from negotiations between Debtor and various creditor constituencies. Its terms unequivocally indicate the eligibility list is dispositive. It is further evident from its terms that eligibility to receive health care benefits from Debtor on November 21, 1981 was requisite to inclusion. Retiree status or employee status with eligibility for retirement on that date was equally explicitly required. All testimony substantiates this reading of the plan provisions. Lynn was ineligible for participation. Moreover, his ineligibility was not the product of oversight or error. Under the terms of the plan, denial of his request for VBP participation was correct.

## SECTION 1132(c) PENALTIES

█ In his briefs, Lynn asserts entitlement to penalties for procedural mishandling of his claim. Section 1132(c) provides for penalty imposition and Section 1132(a)(1)(A) delineates standing for actions thereunder. 29 U.S.C. §§ 1132(c), 1132(a)(1)(A). Penalties were not requested in the pleadings, however, and not properly awarded. Moreover, an award under Section 1132(c) would be inappropriate.

Section 1132(c) provides in pertinent part, as follows:

"(1) any administrator ... (B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (Unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)

Two procedural defects are asserted to justify an award under this section, Committee counsel's delay in responding to the November 5, 1985 letter of appeal and failure to notify Plaintiff of the decision on reconsideration. A protracted discussion of the impropriety of an award for these deficiencies is unnecessary.

Sections 1132(c) and 1132(a)(1)(A) require actions be brought by "participants" or beneficiaries. "Participant" is defined as follows:

"The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7)

"Beneficiary" is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder. 29 U.S.C. § 1002(8). The terms by definition are limited to claimants who have a colorable claim to vested benefits." *Firestone Tire and Rubber Co. v. Bruch,* —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). While Plaintiff was a claimant requesting participation, he lacked a colorable claim to eligibility. Lynn, therefore, is neither a "beneficiary" nor "participant" with standing to request an award of penalties.

## DECISION

The Benefits Committee's decision denying Plaintiff participation in the Voluntary Benefits Program was neither arbitrary or capricious, nor made in bad faith. Plaintiff's failure to satisfy the VBP eligibility provisions is most unfortunate. Sympathy for his position, however, cannot alter the

dictates of the White Motor plan of reorganization and the VBP.

## JUDGMENT

At Cleveland, in said District, on this 19th day of May, 1989.

A Memorandum of Opinion and Decision having been rendered by the Court in this proceeding,

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that judgment is rendered in favor of the defendants.